Patti WHITEHEAD, Appellant,

v.

The STATE of Texas.

No. 2077–02.

Court of Criminal Appeals of Texas.

March 31, 2004.

Larry Watts, Missouri City, for Appellant.

Jim Vollers, Attorney, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, JOHNSON, HOLCOMB and COCHRAN, JJ., joined.

## I. BACKGROUND

### A. Trial

Appellant was convicted of theft. After trial, she filed a motion for new trial and a "motion to withdraw and request to proceed in forma pauperis." The latter motion (signed by defense counsel Gaither, defense counsel Watts, and appellant) requested three items of relief: (1) to permit appellant's retained attorneys to withdraw from the case, (2) to find appellant indigent for appellate purposes, and (3) to appoint counsel to represent appellant on appeal. The motion stated that counsel talked to the court reporter and was advised that the record consisted of "some nine thousand (9,000) pages" and would cost around forty-five thousand dollars. Appellant also filed a monthly income and expense summary, a "net worth" statement outlining assets and liabilities, and an affidavit verifying the accuracy of the financial information in those two documents. Although the motion and appellant's affidavit bore separate filemarks, the body of the motion stated that the affidavit and financial statements were attached to the motion.

The income and expense summary listed a total monthly income of $4,069.33 and total monthly expenses of $3,458.95, with $610.38 left over. Some of the expenses were or could be nonessential, such as $39.88 for cable, $133.98 for phone, and $250.00 designated for "Misc." household expenses. In addition to the mortgage ($565.39), the income and expense summary listed $231.83 for "Loans/Notes Payable." Appellant's net worth statement listed a total of $5,071.36 of cash in bank accounts, the $610.38 left over from the income and expense summary, a 1991 Chevrolet valued at $2,500.00, a 1995 Chrysler valued at $4,300.00, a house valued at $62,000.00, and investments of $1,664.08—for total assets of $76,145.82. The liabilities listed were a $51,048.68 home mortgage, $65,960.11 for legal expenses, a $111,500.00 personal loan from Jesse Whitehead, a $3,231.09 personal loan for litigation, and a $2,321.12 personal loan for medical expenses—for total liabilities of $234,061.00.

At a post-trial hearing conducted on January 16, 2002, the trial court considered the motions. After hearing testimony on the motion for new trial and denying that motion, the trial court asked, "What other issues do we have?" Defense counsel Gaither informed the court that the other motion before it was the motion to proceed in forma pauperis. When Gaither began by saying he was no longer representing appellant, the trial court replied, "What do you mean you're not here as her representation? You're on the case until the Court relieves you." Gaither responded, "Oh okay. Well, that's fine," and proceeded to address the merits of the indigence question.

Gaither told the court that "we tried to expedite" the indigence determination "process a little bit by providing informa-

tion attendant to that motion." The trial court stated that it had read appellant's affidavit showing assets and liabilities. A discussion ensued regarding the State's subpoena for any records showing the contract between appellant and her attorneys. The trial court reviewed Gaither's contract, which excluded appeals from the scope of representation. The trial court then denied appellant's motion to proceed as an indigent and granted Gaither's motion to withdraw.

Gaither then requested that the trial court order a free record for appellant under Texas Rule of Appellate Procedure 20.2.[1] He argued that appellant would be entitled to a free record even if it were determined that she was not entitled to an appointed attorney. This request was denied, but the trial court did authorize making a record of the indigence proceedings for the purpose of appealing the trial court's ruling regarding the requests for a free record and appointment of counsel.[2] Attorney Watts then expressed his understanding that the motion to withdraw was intended to cover both Gaither and himself, but the trial court replied that the motion was granted only as to Gaither. Although attorney Watts expressed a belief that he was incompetent to handle appellant's appeal,[3] the trial court disagreed. Watts also stated that appellant and her husband did not have the assets to buy the record and that appellant was ill, recovering from cancer, and would have to go to the hospital after the hearing. At the end of the proceedings, Mr. Gaither asked, "May we be excused?" and the trial court assented. No one requested that

appellant be allowed to testify about her financial status or that any other evidence be offered on that matter.

On February 12, 2002, Watts and appellant filed affidavits. Watts's affidavit stated that appellant was hospitalized for cancer and that the court reporter told him the record would cost no less than forty-five thousand dollars, and she would require payment in advance unless the county paid for it. Appellant's affidavit stated that she was hospitalized for cancer, without the means to employ counsel, and unable to pay for or give security for the record in this cause.

The notice of appeal was filed on February 12, 2002. On February 22, 2002, appellant filed with the district clerk an affidavit from the court reporter. That affidavit stated that the record contained approximately 13,000 pages and would cost approximately $65,000, not including the cost of exhibits. The affidavit further stated that the court reporter would require payment before she would begin work on the record. The Court of Appeals granted appellant's motion to supplement the record with the affidavit.

### B. Appeal

Appellant raised three contentions in an appeal from the trial court's order denying indigent status. First, appellant argued that the trial court failed to follow the procedures set forth in Texas Code of Criminal Procedure, Article 26.04[4] regarding the determination of indigence. In this regard, she complained that the trial court did not appoint a lawyer to represent

---

**1.** All further references to rules are to the Texas Rules of Appellate Procedure.

**2.** The trial court properly ordered transcription of the indigence hearing for review of its indigence ruling on appeal. *See Snoke v. State,* 717 S.W.2d 5, 6 (Tex.Crim.App.1986).

**3.** At this time Watts also stated that he still considered himself to be under oath. He had testified earlier in the hearing, regarding the motion for new trial.

**4.** All further references to articles are to the Texas Code of Criminal Procedure.

appellant at the hearing on indigence and that the court did not request that appellant complete a questionnaire or submit to examination from the court. Second, appellant contended that the trial court abused its discretion in denying the requests for an appointed lawyer and a free record. She claimed that the documents she submitted satisfied a *prima facie* showing of indigence—shifting the burden of proof to the State and requiring a ruling in her favor if the State produced no contrary evidence. Finally, she contended that the trial court abused its discretion in ordering Watts to remain as appellate counsel. She argued that there was no evidence at the hearing that Watts had entered into an agreement with her to represent her, that he was getting paid for his services, or even that appellant wanted him to represent her on appeal. Although appellant conceded that Watts participated in the trial, she claimed that such participation did not alone qualify him to pursue a criminal appeal on her behalf.

The Court of Appeals found that the trial judge failed to comply with the procedures prescribed by Article 26.04 regarding the appointment of counsel: "the trial judge wholly failed to make any inquiry, or to consider any of the factors prescribed by article 26.04."[5] The Court of Appeals also found that appellant made a *prima facie* showing of entitlement to a free record under Rule 20.2.[6] Finally, the Court of Appeals found that the trial court abused its discretion in refusing to permit Watts to withdraw from the case.[7] The Court of Appeals remanded the case to the trial court "to immediately conduct a hearing to comply with Article 26.04 and Rule 20.2."[8] The Court further held that:

> On remand, the trial court may conclude that appellant is or is not indigent. If the court finds she is not indigent, appellant may appeal that determination. However, if the Court finds that appellant is indigent, the court must appoint counsel and direct the court reporter to file the reporter's record in the appeal on the merits without charge. If the court so finds, then it shall cause a supplemental clerk's record to be filed in the appeal on the merits containing a signed, written order or orders to this effect.[9]

The State petitioned for discretionary review. We granted review to address the questions of indigence and withdrawal of counsel.[10]

---

5. *Whitehead v. State*, No. 13–02–098 CR, slip op. at 9, 2002 WL 31438696, (Tex.App.-Corpus Christi, October 31, 2002)(not designated for publication).

6. *Id.* at 9–10.

7. *Id.* at 9.

8. *Id.* at 10.

9. *Id.* at 10–11 (citations omitted).

10. We granted the State's nine grounds for review, which are as follows:
 1. Can the Court of Appeals reverse and remand for a hearing on the issue of indigency on the basis that the trial judge abused his discretion in failing to conduct a hearing on defendant's motion for a free record when the record affirmatively shows that a hearing was conducted by the trial judge and the trial court refused to grant the defendant a free record?
 2. Is it an abuse of discretion for the trial court to refuse to find a defendant indigent where the affidavit filed by the defendant show [sic] that she and her husband have an annual income of over $48,800.00, cash and bank accounts in the amount of $5,681.00, investments of $1,664.00, and automobiles valued at $6,800.00
 3. Is there a legal distinction between insolvency and indigency?
 4. Is a person indigent within the meaning of Texas Code of Criminal Procedure Annotated, Art. 1.051 where they apparently have unencumbered assets of over $14,000.00 and an annual income of over $48,000.00 merely

## II. ANALYSIS

### A. Scope of review

■ General considerations governing appellate review apply here. An appellate court may not consider factual assertions that are outside the record,[11] and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal.[12] While the record may be supplemented under the appellate rules if something has been omitted,[13] the supplementation rules cannot be used to create new evidence.[14] Moreover, an appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling.[15]

■ One issue we must address is whether an unsworn motion constitutes evidence in this context. In the motion for new trial context, this Court has long imposed the rule that matters not determinable from the trial record must be raised by sworn allegations (such as in an attached affidavit) in order to merit further consideration by the trial court.[16] The reason for this judicially imposed rule was to prevent widespread fishing expeditions.[17] We have also held that a motion is not self-proving in numerous other contexts, such as: a motion for independent examination of an original tape recording,[18] a motion to dismiss the prosecution for failure to afford a speedy trial,[19] a motion to dismiss court-appointed counsel,[20] a mo-

---

because they list debts and obligations which exceed the value of their assets?

5. Does a trial judge abuse his discretion in refusing to find a person indigent who has sufficient amount of unencumbered assets to hire an attorney and to pay for a record merely because that person has other debts which may make them insolvent?

6. Does a trial judge abuse his discretion in refusing to find that a defendant is indigent where the defendant has assets which can be used to hire an attorney and pay for a record and where that person presents no evidence that they have no credit or insufficient credit to borrow funds to pay for an attorney and to pay for a record?

7. Does a trial judge abuse his discretion in refusing to grant the motion to withdraw by an attorney who was hired by a defendant during trial, where that attorney presents no evidence to show that his employment was not to include the handling of any appeal?

8. Does a trial judge abuse his discretion in refusing to allow an attorney retained by a defendant during the trial to withdraw on appeal because of the attorney's claim that he is not competent to handle the appeal?

9. Where the trial court refuses to allow an attorney retained by the defendant during the trail to withdraw on appeal, does such action by the trial court in effect constitute an appointment of the attorney as appellate counsel if the defendant is found to be indigent?

11. *Janecka v. State*, 937 S.W.2d 456, 476 (Tex. Crim.App.1996), *cert. denied*, 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997).

12. *Moore v. State*, 999 S.W.2d 385, 398 (Tex. Crim.App.1999), *cert. denied*, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000).

13. *See* TEX. R. APP. P. 34.5(c), 34.6(d).

14. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim.App.2001); *Williams v. State*, 937 S.W.2d 479, 487 (Tex.Crim.App.1996).

15. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim.App.2003).

16. *Hicks v. State*, 75 Tex.Crim. 461, 482–483, 171 S.W. 755, 765–766 (1914); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim.App.1993); *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim.App.2003).

17. *See Hicks* and *Reyes, supra*.

18. *Johnson v. State*, 650 S.W.2d 784, 790 (Tex.Crim.App.1983).

19. *McManners v. State*, 592 S.W.2d 622, 623 (Tex.Crim.App.1980).

20. *Williams v. State*, 493 S.W.2d 863, 865 (Tex.Crim.App.1973).

tion to withdraw as counsel,[21] a motion to quash an enhancement allegation in an indictment,[22] a motion in arrest of judgment,[23] a motion for continuance,[24] a motion to quash the jury panel,[25] and a motion to disqualify the trial judge.[26] On the other hand, we have recently recognized legislative authorization for trial courts to consider and resolve motions to suppress "on the motions themselves." [27] We found that the plain language of Article 28.01 dictated this result.[28] So, while the general rule is that an unsworn motion does not, by itself, present evidence upon which relief can be granted, the Legislature can modify that rule in a particular context, if it so desires.

Unlike the motion-to-suppress statute, the appointment-of-counsel statute does not give the trial court the option to rule upon an unsworn motion.[29] In fact, the appointment of counsel statute contains two different oath requirements. First, upon requesting a determination of indigence, the defendant must detail his financial resources under oath by completing a written questionnaire, by responding to examination by a judge or magistrate, or by both.[30] Second, before a court determines that a defendant is indeed indigent, the defendant must sign a form oath, provided by statute, stating that he is without means to employ counsel.[31]

The appellate rule authorizing a free appellate record also contains an oath requirement. Rule 20.2 provides that a defendant, within the time for perfecting an appeal, may request a free record by "motion *and* affidavit." [32] As with appoint-

---

**21.** *Id.*

**22.** *Worton v. State,* 492 S.W.2d 519, 520 (Tex. Crim.App.1973).

**23.** *Patton v. State,* 489 S.W.2d 906, 906 (Tex. Crim.App.1973).

**24.** *Rollins v. State,* 488 S.W.2d 429, 429 (Tex. Crim.App.1972).

**25.** *Watson v. State,* 466 S.W.2d 783, 785 (Tex. Crim.App.1971).

**26.** *Hardin v. State,* 453 S.W.2d 156, 156 (Tex.Crim.App.1970)(motion to disqualify trial judge).

**27.** *Bishop v. State,* 85 S.W.3d 819, 821–822 (Tex.Crim.App.2002).

**28.** *Id.* at 822.

**29.** Article 26.04, *passim.*

**30.** Article 26.04(n) provides:

A defendant who requests a determination of indigency and appointment of counsel shall:
(1) complete under oath a questionnaire concerning his financial resources;
(2) respond under oath to an examination regarding his financial resources by the judge

or magistrate responsible for determining whether the defendant is indigent; or
(3) complete the questionnaire and respond to examination by the judge or magistrate.

**31.** Article 26.04(*o*) provides:

Before making a determination whether a defendant is indigent, the court shall request the defendant to sign under oath a statement substantially in the following form: "On this day of, 20——, I have been advised by the (name of the court) Court of my right to representation by counsel in the trial of the charge pending against me. I am without means to employ counsel of my own choosing and I hereby request the court to appoint counsel for me. (signature of the defendant)"

**32.** Rule 20.2 (emphasis added). The rule provides in its entirety:

Within the time for perfecting the appeal, an appellant who is unable to pay for the appellate record may, by motion and affidavit, ask the trial court to have the appellate record furnished without charge. If after hearing the motion the court finds that the appellant cannot pay or give security for the appellate record, the court must order the reporter to transcribe the proceedings. When the court certifies that the appellate record has been furnished to the appellant, the reporter must be paid from the general funds of the county

ment of counsel statute, the free record rule does not offer the option of ruling upon the motion itself.[33] We conclude, then, that only sworn allegations are to be considered in determining whether a defendant is entitled to a free record.

 We now apply the principles discussed above to this case. Assuming, without deciding, that the February 12 affidavits from appellant and Watts and the February 22 affidavit from the court reporter were properly part of the record,[34] we nevertheless hold that they cannot be considered in a review of the trial court's order because the affidavits were not before the trial court at the time of its ruling. We also hold that allegations in the motion to appoint counsel are not evidence for the purpose of appointing counsel or for obtaining a free record. What remains will be considered under the appropriate standard of review, to which we now turn.

## B. Standard of review

 "The indigency determination is made on a case-by-case basis as of the time the issue is raised and not as of some

prior or future time."[35] We have articulated a two-step process for determining whether a defendant is indigent for the purpose of obtaining a free record on appeal: (1) the defendant must make a *prima facie* showing of indigence, and (2) when the *prima facie* showing is made, the burden shifts to the State to show that the defendant is not in fact indigent.[36] This allocation of burdens "best serves to protect the truly indigent defendant's right to effective assistance of counsel."[37] Once the defendant has satisfied a *prima facie* showing, an appellate court can uphold a trial court's determination of non-indigence only if the record contains evidence supporting such a determination.[38] We have at least implied that the two-step process should also be used to determine whether to appoint counsel for appeal. Immediately after the "allocation of burdens" rationale, we stated: "If a defendant is to perfect a meaningful appeal, he must be denied neither the record *nor the services of counsel* merely because he cannot afford them."[39]

The standard of review that attends this two-step process differs somewhat from

---

in which the offense was committed, in the amount set by the trial court.

**33.** *Id., passim.*

**34.** The notice of appeal was filed on February 12, the clerk's record of the indigence hearing was mailed on February 22, and the Court of Appeals file-stamped the record on February 25. We have previously held that the filing of a notice of appeal divests the trial court of general jurisdiction. *Ramirez v. State,* 104 S.W.3d 549, 550 (Tex.Crim.App.2003); *Lopez v. State,* 18 S.W.3d 637, 639 (Tex.Crim.App. 2000). However, Rule 25.2(g) states that further proceedings in the trial court (unless otherwise provided by law or the appellate rules) are suspended "[o]nce the record has been filed in the appellate court." *See also Green v. State,* 906 S.W.2d 937, 939 (Tex. Crim.App.1995). At this juncture, we need not resolve any potential conflict between our cases and the rule, or any ambiguity within

the rule, concerning the exact moment the trial court loses jurisdiction.

**35.** *Gray v. Robinson,* 744 S.W.2d 604, 607 (Tex.Crim.App.1988).

**36.** *Snoke v. State,* 780 S.W.2d 210, 213 (Tex. Crim.App.1989).

**37.** *Id.* (specifically, to protect the effective assistance of counsel on appeal).

**38.** *Id.* at 213–214; *Abdnor v. State,* 712 S.W.2d 136, 141–144 (Tex.Crim.App.1986).

**39.** *Snoke,* 780 S.W.2d at 210; *see also Sifford v. State,* 511 S.W.2d 526, 527 (Tex.Crim.App.1974)(upholding trial court's conclusion that defendant was not indigent for purposes of appointing counsel because there was "evidence in the record to support that finding").

the standard of review articulated recently in *State v. Ross*.[40] In *Ross*, we upheld a trial court's ruling granting a motion to suppress on the basis that the trial court might have completely disbelieved the testimony of the State's witness, even though that testimony was uncontroverted.[41] If the *Ross* standard were applied to the case at hand, the trial court could simply disbelieve appellant's statement in her affidavit that the financial documents are an accurate depiction of her circumstances and, consequently, disbelieve the financial documents themselves, which are simply appellant's summary of her financial situation.[42]

■ By contrast, our past cases suggest that the trial court does not have the nearly unfettered discretion seen in other contexts to simply disbelieve the defendant's evidence of indigence. We have reversed a trial court's failure to find indigence on nothing more than the defendant's own testimony.[43] The idea that a defendant can make a *prima facie* showing suggests that a trial court should accept the defendant's evidence absent some reason in the record for not doing so.[44] Of course, a trial court may require a defendant to verify his claim of indigence with supporting documentation.[45] If the trial court does not request verification, then the defendant's sworn allegations should be accepted unless the allegations are suspect in a manner that verification would not remedy.

After considering the issue, we conclude that our past cases, rather than the standard articulated in *Ross*, should continue to govern a trial court's determination of and appellate review of indigence matters. By requiring the courts to formulate "procedures and financial standards for determining whether a defendant is indigent," the Legislature has indicated a desire for the appointment of counsel to be more strictly regulated than many other matters.[46] The Legislature further specified a list of factors to consider:

> In determining whether a defendant is indigent, the court or the courts' designee may consider the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant. The court or the courts' designee may not consider whether the defendant has posted or is capable of posting bail, except to the extent that it reflects the defendant's financial circumstances as measured by the considerations listed in this subsection.[47]

Moreover, the appointment of counsel statute appears to contemplate that information about the defendant's financial condition will ordinarily come from the defendant.[48] And while the Legislature could

---

**40.** 32 S.W.3d 853 (Tex.Crim.App.2000).

**41.** *Id.* at 858.

**42.** Although the evidence was submitted here by affidavit, rather than live testimony, that fact would not by itself negate the trial court's discretion under *Ross* to disbelieve witnesses. *See Manzi v. State*, 88 S.W.3d 240, 243–244 (Tex.Crim.App.2002).

**43.** *See Snoke,* 780 S.W.2d at 212.

**44.** *See Id.* at 214 (defendant's showing of indigence "has not been substantively undermined by the State").

**45.** *See* the Texas Task Force on Indigent Defense' model affidavits of indigency. Htt p:// www.courts.state.tx.us/tf id/AffidavitsöfIndigencyIntroduction.htm

**46.** Article 26.04(*l*).

**47.** Article 26.04(m).

**48.** Article 26.04(n).

have required the submission of third-party documentation to support a claim of· indigence (e.g. payroll slips, bills from third parties), it did not, opting instead to require the defendant to fill out a questionnaire or answer questions under oath and leaving to the trial court the discretion to request supporting documentation. And the statute contains many other requirements designed to ensure that indigent defendants obtain counsel.[49] Thus, the statute seems designed to ensure representation of indigent persons by increasing the accountability of the judges who make the determination. That design is inconsistent with a standard that would give judges virtually unbridled discretion to reject a defendant's allegation of indigence. More consistent with the apparent legislative intent would be a requirement that judges accept the defendant's financial allegations (so long as they are made under oath) absent any reason to believe they are untrue or incomplete.

Further, the original policy reason for a less deferential review, articulated in our prior cases, still applies: it better promotes the policy of adequately affording legal representation to indigent persons. If a defendant's financial allegations may always be disbelieved, and the defendant must prove his indigence, then effective review of a trial court's indigence determination would be stymied, and there would be an increased risk that truly indigent defendants would be deprived of counsel. And the disadvantages of erroneously ruling in the defendant's favor are relatively innocuous. Erroneously finding the defen-

dant indigent would not affect underlying substantive determinations—as would, for instance, erroneously suppressing evidence. The question of indigence is subject to reconsideration if the defendant's financial status changes,[50] and, at least in the case of appointed counsel, the defendant can be required to reimburse the cost of legal services if it is later determined that he is able to do so.[51]

■ Although the standard of review for a trial court's determination of indigence is not as deferential as the standard in *Ross*, deference is still a part of the standard. The trial court is not completely free to disbelieve the defendant's allegations concerning his own financial status, but the trial court may disbelieve an allegation if there is a reasonable, articulable basis for doing so, either because there is conflicting evidence or because the ·evidence submitted is in some manner suspect or determined by the court to be inadequate.[52] ·

## C. Hearing

■ Before we review the facts of this case, we examine whether the trial court conducted an adequate hearing.· It is important to recognize that the trial court's duty diverges for the two indigence questions, i.e. indigence for the purpose of a free record and indigence for the purpose of free counsel. To obtain a free record, the defendant must exercise due diligence in asserting his indigence and must sustain his allegations at the hear-

---

49. *See* Article 26.04, generally.

50. Article 26.04(p); *Snoke*, 780 S.W.2d at 214.

51. Article 26.05(g).

52. This is arguably the same standard often applied to *recantations occurring immediately*

after trial. *See Keeter v. ·State*, 74 S.W.3d 31, 37–38 (Tex.Crim.App.2002). While· we express no opinion concerning the suitability of that standard to the recantation context, the standard does seem suited to the indigence context.

ing.[53] By contrast, the right to an attorney is a "waivable-only" right,[54] and absent a waiver, the courts have an affirmative obligation to ensure that an indigent appellant has counsel.[55]

The Court of Appeals's remand order requires the trial court to reconsider the question of indigence in both contexts. While the Court of Appeals faulted the trial court for conducting an inadequate inquiry regarding the appointment of counsel, it did not specifically fault the trial court's inquiry as it pertained to the request for a free record. Instead the Court of Appeals held that appellant had made a *prima facie* case and apparently assumed further inquiry was warranted. The remand order is erroneous on both counts.

■ Appellant submitted "an income and expense summary" and a "net worth statement," along with a signed affidavit swearing that the information contained in these financial documents was true. The defense tendered these documents to "expedite" the indigence determination process. Under these circumstances, the documents served the same purpose as answering a written questionnaire and thus sufficed to meet the requirements of Article 26.04(n)(1). Moreover, a hearing was conducted, and the trial court did nothing to limit its scope. The trial court considered the financial documents submitted by appellant, the arguments of counsel, and the sworn testimony of attorney Watts. While appellant now indicates there was other evidence to be considered, she did not attempt to introduce other evidence at the hearing. We have no reason to believe that the trial court would have refused to allow the introduction of other evidence, such as live testimony from appellant, had that evidence been offered. Nor do we see any significant gaps in the financial picture offered by appellant. She purported to itemize all income, expenses, property, assets, and debts.[56]

As for the Court of Appeals's conclusion that appellant made a *prima facie* showing that she could not pay for the record, that conclusion, if true, would justify relief rather than a remand for further proceedings. A remand would be required only if the trial court had deprived the State of the opportunity to respond to appellant's evidence. But the State had the same opportunity as appellant to offer whatever evidence it wished.

Of course, either party may move for reconsideration of the trial court's determination on the question of indigence if circumstances have materially changed since the trial court ruled.[57] We have likewise recognized the ability to reconsider the indigence question in connection with determining whether the defendant is entitled to a free record.[58] No request for reconsideration based upon changed circumstances has been made.

53. *Abdnor*, 712 S.W.2d at 140–141.

54. *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim.App.1993).

55. *Swenson v. Bosler*, 386 U.S. 258, 259, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967)(no request necessary to be entitled to counsel on appeal).

56. Arguably, appellant forfeited any complaint about the manner of conducting the hearing by failing to object to it. But since the right to counsel is a waivable-only right, there may be a question about whether error can be forfeited at a hearing designed to determine whether a defendant is entitled to a waivable-only right.

57. Article 26.04(p) (authorizing a motion for reconsideration if "there is a material change in financial circumstances after a determination of indigency or non-indigency is made.")

58. *Abdnor*, 712 S.W.2d at 144; *Snoke*, 780 S.W.2d at 214.

### D. Indigence

 We now turn to a review of the trial court's indigence determinations in this case. In the appointment of counsel context, a defendant is indigent if he is financially "without the means to employ counsel" of his own choosing.[59] For the purpose of determining entitlement to a free record, a defendant is considered indigent if he "cannot pay or give security" for the appellate record.[60] While these inquiries generally involve the same factors to be considered, it is possible for a defendant to be indigent in one context but not the other. In *Castillo v. State*, for example, the defendant had managed to retain counsel, but we determined that he could not pay for a transcription of the court reporter's notes.[61]

 Relevant to both inquiries are the factors set out in the appointment of counsel statute, previously quoted in this opinion: the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, spousal income available to the defendant, and ability to post bail to the extent that ability relates to the other factors. The ability of the defendant to borrow funds is something that may be taken into account in considering how the defendant's assets and property relate to the ability to pay.[62] Of course, a defendant should not be required to borrow money that can never be repaid except by depriving the defendant of the necessities of life.[63] And the expense involved in hiring counsel or paying for the appellate record is also a valid consider-

ation. It is this last category that produces the greatest possibility of a divergence in the defendant's ability to pay in these two contexts.

 We now turn to the merits of appellant's claims of indigence. Although appellant's "net worth" statement alleges that her liabilities outweigh her assets, a negative net worth is by no means determinative. In deciding that corporations cannot qualify for *in pauperis* treatment on appeal, the Supreme Court indicated that corporate insolvency and individual indigence are not necessarily the same because a temporarily insolvent corporation may be perfectly able to pay court costs and retain legal counsel.[64] Likewise, an individual's negative net worth does not necessarily translate into indigence; the real question is whether the defendant is capable of paying for legal counsel and for the appellate record.

By appellant's own admission, she had over $5,000 cash in bank accounts, over $1,600 in investments, two cars totaling $6,800, and $10,000 worth of equity in her home. Appellant also had, by her own admission, a net household income, after all expenses were paid, of $610.38 a month. These are substantial amounts of money.

Moreover, the $111,500.00 loan from "Jesse Whitehead" appears to be a loan from a relative, and there is no indication what the loan is for. The trial court could have reasonably believed the loan did not have to be repaid right away. Appellant did not include payments for legal ex-

---

**59.** Article 26.04(*o*).

**60.** Rule 20.2.

**61.** 595 S.W.2d 552, 554 (Tex.Crim.App.1980).

**62.** *See Goffney v. Lowry*, 554 S.W.2d 157, 159 (Tex.1977)(citing and quoting *Pinchback v.*

*Hockless*, 139 Tex. 536, 164 S.W.2d 19, 20 (Tex.1942)).

**63.** *Id.*

**64.** *Rowland v. Calif. Men's Colony*, 506 U.S. 194, 206, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993)

penses on her income and expense sheet, though she claimed the debt. The trial court could have concluded that the $65,960.11 litigation debt and the $3,231.09 litigation loan were not immediately payable. Further, the trial court could have reasonably believed that the expense summary contained unnecessary items. Under the circumstances, the trial court could have reasonably believed that appellant was not indigent for the purpose of appointing counsel.

Of greater concern is the cost of the record. If the record costs $65,000 or more, there could be a serious question about whether appellant had the funds to pay for it, especially if advance payment were required. However, appellant failed to introduce before the trial court competent evidence of the cost of the record or that the record would have to be paid for in advance. The motion was not evidence because it was not sworn, and the affidavits regarding this matter were not before the trial court at the time of its ruling. While the record from the hearing on indigence makes it clear that the trial proceedings were lengthy, we are unable to conclude that the trial court abused its discretion, absent some evidence showing at least a ballpark figure for the cost of the record.

### E. Request to withdraw

▆▆▆▆ Finally, we address appellant's contention that the trial court abused its discretion in refusing to permit Watts to withdraw as counsel. Retained trial counsel has a duty to ensure that a notice of appeal is filed if the defendant wishes to appeal.[65] The attorney then has two options: (1) he can effectively volunteer to serve as appellate counsel by signing the notice of appeal himself, or (2) "the defendant may file the notice *pro se*, which serves as an indication that trial counsel does not wish to pursue his client's appeal."[66] Nothing in the appellate rules requires *retained* trial counsel to serve as counsel on appeal if he does not sign the notice.[67] In fact, Rule 6.4 specifically bars *appointed* counsel in a criminal case from filing a "nonrepresentation" notice but does not mention retained counsel. Retained counsel must file a motion to withdraw,[68] but that motion should ordinarily be granted.[69] If there is a question of indigence, however, the trial judge may delay leave to withdraw until the indigence proceedings are complete.[70]

Although the trial court was within its discretion to require appellant's retained attorneys to remain counsel for the duration of the indigence hearing, the trial court abused its discretion when it denied Watts's motion to withdraw after the question of indigence was determined. The situation might have been different if Watts had had an agreement with appellant to represent her on appeal, but he did

65. *Jones v. State*, 98 S.W.3d 700, 703 (Tex. Crim.App.2003).

66. *Id.* (internal quotation marks omitted).

67. *See* Rules 6.1–6.6.

68. *Ex Parte Axel*, 757 S.W.2d 369, 373–374 (Tex.Crim.App.1988).

69. *Id.* ("But it was not then, and is not now, required that written notice of appeal be made by trial counsel, and thus 'volunteer' to become attorney of record on appeal"; holding that a *pro se* notice of appeal combined with a motion to withdraw places the trial court on notice that the defendant, if indigent, needs appointed counsel, unless another attorney has already been retained).

70. *Id.* at 374 n. 7 ("the judge may require withdrawing trial counsel to continue to serve through such indigency proceeding, and withhold signing an order granting leave to withdraw until that bit of business is done").

not. While the better practice might be for an attorney to expressly exclude appeals in a written contract, as Gaither had done, retained trial counsel is not bound to represent a defendant on appeal absent an agreement to do so.

## III. DISPOSITION

In summary, we hold that the Court of Appeals erred in holding that the trial court failed to conduct an adequate indigence hearing. We also hold that the Court of Appeals erred in holding that appellant made out a *prima facie* case of indigence for Rule 20.2 purposes. However, we hold that the Court of Appeals correctly held that the trial court abused its discretion when it refused to permit Watts to withdraw after the indigence question was decided.

The judgment of the Court of Appeals is reversed in part and affirmed in part. The case is remanded to the trial court to determine whether appellant wishes to appeal the judgment of conviction, and if so, whether she wishes to proceed *pro se* or with retained counsel. If Watts so desires and appellant consents, he may volunteer to remain as retained counsel; otherwise, he must be permitted to withdraw. The trial court is free to reconsider appellant's indigence under Article 26.04 or Rule 20.2 if it finds a material change in circumstances has occurred since it last considered the issue. Otherwise, appellant's notice of appeal from the judgment of conviction will be due 30 days from the date mandate issues in this case, and if notice of appeal is filed, the record will be due 120 days from the date of mandate.[71]

WOMACK, J. concurred in the result.

71. *See* Rule 35.2(b).

PRICE, J. filed a concurring opinion in which JOHNSON, HOLCOMB, and COCHRAN, JJ., joined.

HERVEY, J., filed a concurring opinion in which KEASLER, J., joined.

PRICE, J., concurring in which JOHNSON, HOLCOMB, and COCHRAN, J.J., joined.

I agree with the majority's conclusions that (1) the trial court should have allowed retained counsel to withdraw, (2) the sworn documents before the trial court indicate that the appellant had enough money to retain counsel, and (3) there was no sworn evidence in the record of how much the record would cost before the trial court ruled on the motion. I write separately to emphasize that the trial court may reconsider the appellant's indigence if the circumstances have changed since the trial court first ruled, and therefore the appellant may bring these changed circumstances to the trial court's attention

I have one other concern about this case. I do not think that it would necessarily be reasonable for the trial court to have assumed that the loan from Jesse Whitehead did not have to be repaid right away absent evidence to the contrary.

With these comments, I join the majority opinion.

HERVEY, J., concurring in which Keasler, J., joined.

I join parts I.A., I.B., II.E., and III. of the Court's opinion. The discussion in part II.B. of the Court's opinion on the appellate standard of review of a trial court's ultimate determination of non-indigence is unnecessary because the issue here is whether to uphold the trial court's determination that appellant failed to

make a *prima facie* showing of indigence, which is a question of law. *See Lopez v. State*, 954 S.W.2d 774, 776 (Tex.Cr.App. 1997) (McCormick, P.J., dissenting to refusal of State's discretionary review petition) (*prima facie* case simply means there is sufficient evidence that *if believed* by the factfinder will support a particular finding).

And, as to the discussion in part II.D. of the Court's opinion on what I assume to be the legal issue of whether appellant made a *prima facie* showing of indigence, I would decide that someone who has a total monthly income of $4,069.33 cannot establish a *prima facie* case of indigence for purposes of determining whether the taxpayers should furnish her with a record and a lawyer. That this person may be insolvent because of the way she chooses to spend her money is irrelevant to the indigence question. This would make it unnecessary to address the issues discussed in parts II.A. and II.C. of the Court's opinion.

With these comments, I concur in the Court's judgment.