IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,199






EX PARTE BRANDY DEL BRIGGS, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


CAUSE NO. 815234-A FROM THE 232
ND DISTRICT COURT


HARRIS COUNTY






 Keller, P.J., filed a dissenting opinion.



 The trial court made a number of findings adverse to applicant's allegations and
recommended denying relief. In my opinion, the Court does not sufficiently address those adverse
findings. Because I think the trial court's findings are supported by the record and compel denying
relief here, I dissent.

 Applicant claims, among other things, that her trial attorney did not investigate any medical
records involving her son. She claims that the attorney told her that, unless she paid eight to ten
thousand dollars for an expert, she would go to prison for twenty years or more, or perhaps for life. 
She further claims that her attorney and the prosecutor told her that if she pled guilty she would get
deferred adjudication. She also claims that counsel told her to make up a story about shaking the
baby in order to get probation. 

 All of these claims were denied by counsel in his affidavit dated April 8, 2004. Counsel
specifically stated that he not only reviewed the medical records, but he highlighted the portions of
those records that posed problems for the defense, and he discussed those records with applicant in
detail, including the highlighted portions. He acknowledged that he told applicant that she needed
to pay him to hire a medical expert to review those records and compare them to brochures he had
ordered regarding a similar disease, and that the cost could range from $2500 to $7500. At no time,
however, did he claim that if she failed to do so she would go to prison. The entire time, applicant
and her family told defense counsel that "they were working on getting some money" for an expert. 
But they never did pay counsel for an expert. On the date of trial, the prosecutor offered to agree to
a plea to the lesser offense of reckless injury to a child, a second degree felony, instead of the first
degree intentional injury to a child offense applicant was charged with. Counsel further stated in his
affidavit that he never told applicant to make up a story about shaking the baby and applicant was
never promised probation or deferred adjudication.

 In an amendment to her application, dated May 17, 2004, applicant contended, among other
things, that a May 18, 2000 letter from trial counsel showed that applicant had no money to hire
experts. In that letter counsel stated that he had written letters and verbally requested the balance
of his fee, as well as money to hire experts, but was "told that there is no money available for either." 
He further told applicant that his fee was low for a murder prosecution but he had not increased his
fee because he "knew finances were a problem." Counsel told applicant that he could not continue
on the case without being paid the balance of his fee and would probably present a motion to
withdraw. His draft of the motion to withdraw (which he never filed) stated that he had not been
paid his fee and "has been advised there are no funds available for any payments in the future" and
requested that the trial court permit him to withdraw from the case. In the amendment, applicant
faulted counsel for not petitioning the trial court to have an expert appointed. 

 The trial court chose to believe trial counsel. Based on the documents filed in the habeas
action, the official records of the challenged conviction, testimony from the evidentiary hearing held
on the application, and the trial court's own recollection, the trial court specifically found that
applicant was not credible and that her trial counsel and the prosecutor were credible individuals. 
The trial court found that defense counsel did not tell applicant that she would go to prison if she did
not pay for an expert. The trial court found that neither trial counsel nor the prosecutor promised
applicant that the judge would give her any form of probation. The trial court further found that trial
counsel was aware of the victim's pre-existing medical condition and had perused the medical
records pertaining to that condition. The trial court found that applicant's guilty plea was entered
"freely and voluntarily, with a full understanding of the consequences of doing so." And the trial
court found that "there is no evidence that applicant was indigent at any time before she pled guilty." 
 The Court contends that trial counsel should have done one of three things when it became
clear that applicant could not come up with the remainder of the fee or additional money for medical
experts. First, the Court claims that counsel could have subpoenaed all the treating physicians to
testify at trial, introduce the medical records, and elicit their opinions. The Court does not point to
any evidence in the record to show that counsel did not subpoena those witnesses. But assuming
arguendo that counsel did not do so, that failure could be reasonable trial strategy because counsel
could reasonably believe that the treating physicians would testify adversely to his client. And in
fact, applicant has not presented affidavits or testimony from the treating physicians with this
application, although she could, presumably, have subpoenaed them to the writ hearing. As stated
above, counsel had discussed the medical documentation with his client, and that discussion included
problems that portions of documents appeared to pose for the defense. To the extent the documents
are exculpatory, counsel could also reasonably believe that he could use them to cross-examine the
State's experts - accomplishing the objective set out by the Court. But counsel was not required to
go to trial because applicant chose of her own free will to plead guilty. Counsel could reasonably
believe applicant was unwilling rather than unable to pay for a defense expert. Counsel could also
reasonably believe that applicant's decision to plead guilty was an intelligent one, given that the
medical documents were not entirely exculpatory. Counsel could also reasonably believe that
applicant pled guilty, rather than going to trial, because she was guilty and going to trial risked a
much harsher sentence than the maximum allowed in the plea agreement.

 The Court's second option is that counsel, if convinced that applicant could not pay for
experts to assist him, could ask to withdraw from the case, prove indigence, and request the
appointment of new counsel. But the trial court concluded that there was no evidence of indigence. 
The Court claims that indigence was proven in the writ proceeding, but the only matters cited by
applicant as evidence of indigence are a letter and a draft motion stating that the attorney had been
told that there were no funds available for future payments. The "unavailability of funds" and
"finances" being "a problem" are not, standing alone, sufficient to show indigence. It may be that
applicant had the resources to obtain the funds but was unwilling to make hard economic choices
that required doing so, (1) especially if she thought that because she was guilty, an expert would find
evidence of her guilt. Moreover, the trial court was free to believe counsel's statement that
throughout the entire time, applicant and her family told him "they were working on getting some
money." Even if the May 18th letter constituted an indication of indigence, which it did not,
applicant's trial date did not arrive until October 2nd, and the trial court could have believed that
these assurances about getting the money were made after the letter, and are the reason counsel did
not follow through on his avowed intention to withdraw from the case.

 Finally, the Court claims that counsel could have remained for a reduced fee and requested
investigatory and expert witness fees for a now-indigent client. But again, the trial court concluded
that there is no evidence that applicant was indigent at any time before she pled guilty, and that
conclusion appears to comport with the record, both in the original proceeding and on habeas.

 Based on the trial court's findings - including those about applicant's credibility, the
voluntariness of the plea, and the absence of evidence of indigence - I would deny relief. I
respectfully dissent.

 Keller, P.J.

Date filed: December 16, 2005

Publish 


 
1. See Whitehead v. State, 130 S.W.3d 866 (Tex. Crim. App. 2004).