IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0220-06



 



KENNETH TUCK, Appellant
 


v.



THE STATE OF TEXAS






ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY





 Price, J., delivered the opinion for a unanimous Court. 


O P I N I O N



 This case presents the question whether a defendant, in establishing indigency for
purposes of procuring a free appellate record, must prove the reasonableness of his expenses
and financial obligations in order to obtain a free record for appeal. We conclude, as did the
court of appeals in this case, that an inquiry into the reasonableness of a defendant's expenses
and financial obligations is relevant in determining whether a defendant is indigent and
unable to pay or give security for the appellate record. Nevertheless, we vacate the court of
appeals' decision and remand to the trial court.

THE FACTS AND PROCEDURAL POSTURE


 The appellant was convicted of theft over $20,000 and sentenced to five years in
prison. The trial court suspended the sentence and placed the appellant on community
supervision for ten years. After trial, the appellant timely filed a notice of appeal and motion
for new trial. Subsequently, the appellant filed a motion for a free appellate record with an
affidavit of indigency. The trial court held a hearing on the appellant's motion.

 At the indigency hearing conducted on May 18, 2004, the appellant testified on his
own behalf. On cross-examination, the appellant stated he earned approximately $450 per
month, paid $540 a month for a 1997 Suburban, and rented an apartment for $950 a month. 
The appellant further testified that he had borrowed money from his brother the last couple
of months in order to pay for his expenses. He was unsure, however, how long he would be
able to continue borrowing money from his brother. When questioned about other financial
assets, such as stocks and savings accounts, the appellant responded that his only asset was
a bank account that contained $100. At the conclusion of the cross-examination, the
prosecutor stated the cost of the appellate record would be $2,100 for the transcript and
estimated an additional $500 to $700 cost for three boxes of exhibits. After hearing the
testimony of the appellant, the trial judge determined that the testimony and affidavit did not
provide enough information to make a ruling on the appellant's indigency motion. The trial
judge ordered the appellant to fill out an information form on indigency and to provide
additional information on his financial status.

 Pursuant to the trial court's instruction, the appellant filed an indigence form and an
addendum that included a two-week pay stub and income tax return for 2003. On the
indigence form, the appellant claimed his total income per month was $1,200 and total
necessary expenses per month were $1,790. The appellant's total income was divided into
two sources: 1) $600 of appellant's own earnings, and; 2) $600 of other funds. The trial
judge decided the appellant had not established his indigency and denied him a record at
public expense.

 On appeal to the Third Court of Appeals, the appellant argued the trial court abused
its discretion by denying him a free appellate record. The appellant alleged that he made the
requisite prima facie showing of indigence, and that this showing went unrefuted by the
State. In a memorandum opinion, the court of appeals held "the [trial] court could have
reasonably believed that some of appellant's expenses--specifically the $950 rent and $540
car payment--were unnecessarily high. The court could reasonably expect a person claiming
a monthly income of $1200 to find less expensive housing and means of transportation, and
to use the money saved to pay the court reporter." (1)

 Appellant filed his petition for discretionary review, which we granted to examine the
issue of whether a defendant must prove the reasonableness of his expenses and financial
obligations in order to obtain a free record for appeal.

ANALYSIS


 In the context of entitlement to a free appellate record, an indigent defendant is
defined as one who "cannot pay or give security for the appellate record." (2) It is well
established that the determination of indigency is made on a case-by-case basis. (3) 
Furthermore, this determination is made at the time the issue is raised, as opposed to a prior
or future point in time. (4) Specifically, determining indigence for a free appellate record is "a
matter of financial status at the time of appeal, not at the time of trial." (5)

 A two-step process must be satisfied in order for a defendant to obtain indigent status
and receive a free appellate record: 1) the defendant must make a prima facie showing of
indigence, and 2) once a prima facie showing is made, the State then carries the burden to
refute this showing and prove the defendant is not indigent. (6) In reviewing the evidence, a
trial court cannot simply disregard evidence of indigence without reason. (7) Rather, unless
there is a reasonable, articulable basis in the record to discount it, a trial court must accept
the defendant's evidence as true. (8) The Legislature has articulated various factors to be
considered when making a prima facie showing. The pertinent statutory language reads:

 In determining whether a defendant is indigent, the court or the courts'
[sic] designee may consider the defendant's income, source of income, assets,
property owned, outstanding obligations, necessary expenses, the number and
ages of dependents, and spousal income that is available to the defendant. (9)


As stated in the statute, two relevant factors in determining indigence are "outstanding
obligations" and "necessary expenses." It is clear from the statute that the Legislature
accepted these factors as relevant to an indigency assessment. In the case at hand, we are
not asked to decide whether a defendant's expenses can be considered; rather we must decide
whether it is appropriate for a trial court to consider the reasonableness of a defendant's
expenses and financial obligations in deciding whether a defendant made a prima facie
showing of indigence. 

 The controversial expenses in this case are the appellant's $950 monthly rental
payment and $540 monthly car payment. The appellant argues that the court of appeals'
decision conflicts with our holding in Whitehead v. State. (10) Specifically, the appellant
invokes the statement that trial courts do not have unfettered discretion to disbelieve
evidence of indigency and "should accept the defendant's evidence absent some reason in
the record for not doing so." (11) Appellant maintains that he made a prima facie showing of
indigence and that the evidence produced supports this showing. Meanwhile, the State
contends that these two payments are unnecessarily high and that an unnecessarily large
expense essentially equates to an unnecessary expense. The State further argues, essentially,
that there was a reasonable, articulable basis in the record for the trial court to reject the
appellant's proffer of prima facie evidence of indigence in that the appellant's expenses were
unnecessarily high.

 We hold that an inquiry into the reasonableness of a defendant's expenses is
appropriate in order to adequately determine whether a defendant can pay or give security
for an appellate record. Tax payers should not have to pay for an appellate record on behalf
of a defendant who is living a lifestyle substantially beyond his means while claiming to be
indigent. If a defendant's own evidence proffered in support of a showing of indigence
demonstrates unreasonable expenses, or expenses that are manifestly unreasonably high, that
may serve as a basis in the record to support a trial court's conclusion that he is not indigent. 
Therefore, it is acceptable for a trial court to make a finding that a defendant's expenses are
unreasonably high and could reasonably be reduced to an amount sufficient that the
defendant is able to pay or give security for an appellate record.

 However, the reasonableness of a defendant's expenses and financial obligations must
be viewed in light of the totality of his financial situation and not in isolation. The fact that
a defendant's income is less than his expenses does not create an automatic presumption that
his expenses are unreasonable. Unless his expenses are intrinsically unreasonable, or
manifestly unreasonably high, concrete evidence must exist in the record to show that a
defendant's expenses are indeed unreasonable and overly burdensome on his limited
financial resources. A court cannot presume unreasonableness; some aspect of the record
must support such a determination.

 In Zanghetti v. State, (12) the appellant claimed she was indigent and entitled to a free
appellate record. At issue were her 1974 Lincoln Continental and her purported luxury
apartment. The State claimed her vehicle had a value of $5000 with an outstanding
encumbrance of $1600. (13) The State argued the appellant, therefore, had $3400 she could
devote to paying for the appellate record. (14) In addition, the State contended the apartment,
at $225 per month, was a "relative luxury." (15) However, this Court determined that the only
evidence pertaining to the car was that there was no market for a used 1974 Lincoln
Continental, and there was nothing in the record to prove the appellant's apartment could be
characterized as a "luxury." (16) The Court concluded that the appellant met her burden and
made a prima facie showing of her right to a free appellate record. (17)

 In the record currently before us, the evidence shows the appellant had a monthly
income of, at most, $1200 and expenses of $1790, while the appellate record would cost
between $2100 and $2800. Based on these facts, it is apparent that the appellant is unable
to pay or give security for an appellate record. Crediting only this evidence, we could only
conclude that the appellant, by definition, would qualify as an indigent. In Whitehead, we
acknowledged that a defendant could establish a prima facie showing of indigence on
nothing more than his own testimony, and "that a trial court should accept the defendant's
evidence absent some reason in the record for not doing so." (18) There is nothing inherent in
the appellant's evidence of indigence to support a finding that his expenses are manifestly
unreasonably high. The State has not shown that $950 is an exorbitant amount to pay in rent
for an apartment in the Austin area, or that his car payment is extravagant. More to the point,
the record contains no evidence that, even if the appellant were able to reduce these
expenses, he would then be able to pay for the record. The appellant would have to reduce
his expenses by $590 a month just to equalize his expenses with his income. Reviewing the
appellant's expenses in light of his total financial situation, no evidence exists that suggests
his rent and car payment are unreasonable or that, but for these expenses, the appellant would
be able to pay or give security for the record. We cannot say that this record provides a basis
for the trial court to reject the appellant's evidence of indigence.

CONCLUSION


 We hold that an inquiry into the reasonableness of a defendant's expenses and
financial obligations is proper in order to adequately determine whether a defendant is
capable of paying for or entitled to a free appellate record. But we vacate the court of
appeals' decision because its rejection of the appellant's evidence of indigence is
unsupported by the record. On the basis of this holding, coupled with the fact that more than
two years have elapsed since the appellant's indigency hearing and his circumstances may
have changed, we remand to the trial court to conduct a new hearing. In light of our holding,
the trial court may reassess not only the appellant's finances but also the reasonableness of
his expenses. If the trial court finds that the appellant's expenses are unreasonable and, but
for the unreasonable expenses, the appellant would be able to pay or give security for the
appellate record, then the trial court may deny the appellant access to a free appellate record. 

 Accordingly, the court of appeals' judgment is vacated, and the cause is remanded to
the trial court for further proceedings not inconsistent with this opinion.

Delivered: February 7, 2007

Publish
1. 

 Tuck v. State, No. 03-04-00177-CR, 2005 Tex. App. LEXIS 9677, at *4 (Tex. App.--Austin
Nov. 17, 2005, pet. granted) (not designated for publication).
2. 

 Tex. R. App. P. 20.2.
3. 

 Whitehead v. State, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004); Castillo v. State, 595
S.W.2d 552, 554 (Tex. Crim. App. 1980).
4. 

 Whitehead, 130 S.W.3d at 874.
5. 

 Castillo, 595 S.W.2d at 554; see also Abdnor v. State, 712 S.W.2d 136, 141 (Tex. Crim. App.
1986) (reiterating that indigency is determined by a defendant's financial status at the time of appeal,
not at the time of trial). During the indigency hearing, the State claimed that the appellant made a
substantial amount of money at one time. Whether true or not, past financial status is not
determinative of whether the appellant is indigent.
6. 

 Whitehead, 130 S.W.3d at 874; Snoke v. State, 780 S.W.2d 210, 213 (Tex. Crim. App.
1989).
7. 

 Compare Whitehead, 130 S.W.3d at 875 ("[T]he trial court does not have the nearly
unfettered discretion seen in other contexts to simply disbelieve the defendant's evidence of
indigence. . . . [A] trial court should accept the defendant's evidence absent some reason in the
record for not doing so."), with Ross v. State, 32 S.W.3d 853, 857 (Tex. Crim. App. 2000)
(upholding the grant of a motion to suppress on grounds that the trial court could have simply
disbelieved the State witness's testimony).
8. 

 See Whitehead, 130 S.W.3d at 876 ("[T]he trial court may disbelieve an allegation if there
is a reasonable, articulable basis for doing so, either because there is conflicting evidence or because
the evidence submitted is in some manner suspect or determined by the court to be inadequate.").
9. 

 Tex. Code Crim. Proc. Ann. art. 26.04(m). Though this particular article specifically
pertains to "Procedures for Appointing Counsel," this Court has determined that the factors listed
are relevant to a finding of indigence for purposes of procuring a free appellate record. See
Whitehead, 130 S.W.3d at 878.
10. 

 130 S.W.3d 866 (Tex. Crim. App. 2004).
11. 

 Id. at 875.
12. 

 582 S.W.2d 461 (Tex. Crim. App. 1979).
13. 

 Zanghetti, 582 S.W.2d at 462-63.
14. 

 Id. at 463.
15. 

 Id.
16. 

 Id.
17. 

 Id.
18. 

 Whitehead, 130 S.W.3d at 875.