

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00027-CR

**BURNS GILES MILLER,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the County Court at Law No. 1
### McLennan County, Texas
### Trial Court No. 20160215CR1

## MEMORANDUM OPINION

In one issue with two sub-parts, Appellant Burns Giles Miller appeals the trial court's denial of his request for appointment of counsel. The State does not oppose Miller's request for relief. We will reverse the trial court's judgment and remand this case for further proceedings.

After Miller entered a plea of guilty to the offense of driving while intoxicated with a prior conviction, the trial court sentenced him to twenty-four months' community supervision. Miller was represented by appointed counsel at the time of his plea and

sentencing. Approximately four months after sentencing, the State moved to revoke Miller's community supervision. Miller requested the appointment of counsel and completed an affidavit of indigency, but his request was denied by the trial court without a hearing. The trial court specifically found, "[d]ocumented income and/or assets are over allowable amounts." Miller, whose wife is in a nursing home, reported a monthly income of $1,572.00 from Social Security and bills and expenses of $1,688.78. After the trial court denied his request for counsel, Miller represented himself at the revocation hearing. The trial court found the State's allegations were true, revoked Miller's community supervision, and sentenced him to 180 days in the county jail. Although Miller did not complete a new affidavit of indigency, the trial court appointed counsel to represent him on appeal.

As noted, Miller argues that the trial court erred in denying his request to have counsel appointed. Specifically, Miller first asserts that the trial court abused its discretion in finding that he was not indigent after he made a *prima facie* showing of indigence that was not contradicted by the State. Miller further asserts that, even if the trial court did not err on the issue of his indigency, he did not voluntarily, knowingly, and intelligently waive his right to counsel. Because we determine that the trial court abused its discretion in finding that Miller was not indigent, we do not reach the waiver issue.

Indigency determinations are made on a case-by-case basis and are reviewable for an abuse of discretion. *See McFatridge v. State*, 309 S.W.3d 1, 5 (Tex. Crim. App. 2010); *see also Coleman v. State*, 246 S.W.3d 76, 85 (Tex. Crim. App. 2008). Courts use a two-step

process when making indigency determinations for purposes of appointment of counsel. *McFatridge*, 309 S.W.3d at 6. First, the defendant must make a *prima facie* showing of indigence. *Id.* Once the defendant satisfies this initial burden of production, the burden then shifts to the State to show that the defendant is not, in fact, indigent. *Id.* If a defendant establishes a *prima facie* case, "an appellate court can uphold a trial court's determination of non-indigence only if the record contains evidence supporting such a determination." *Id.* (quoting *Whitehead v. State*, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004)). We will uphold the trial court's decision denying a defendant's indigent status only if we find that the trial court, having used the appropriate test, "'reasonably' believed the defendant was not indigent." *Id.* The trial court may require a defendant to verify his claim of indigence with supporting documentation. *Whitehead*, 130 S.W.3d at 875. "If the trial court does not request verification, then the defendant's sworn allegations should be accepted unless the allegations are suspect in a manner that verification would not remedy." *Id.*

Although there are no set standards to guide the trial court in making a determination of indigency, the factors in article 26.04(m) of the Code of Criminal Procedure should be considered. TEX. CODE CRIM. PROC. ANN. art. 26.04(m) (West Supp. 2017); *see also Ex parte Bain*, 568 S.W.2d 356, 361 (Tex. Crim. App. 1978). Article 26.04(m) provides:

> In determining whether a defendant is indigent, the court or the courts' designee may consider the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant.

The trial court should also consider the State-mandated guidelines adopted by McLennan County. *See White v. State*, 441 S.W.3d 803, 807 (Tex. App.—Texarkana 2014, no pet.) (citing art. 26.04(l)); *see also* art. 26.04(a) (judges of courts in each county shall adopt and publish written procedures for timely and fairly appointing counsel for indigent defendants). We take judicial notice of the Indigent Defense Plan that has been adopted by McLennan County and that has been provided as an exhibit by Miller.[1] This plan considers a defendant indigent if his household income does not exceed 125% of the poverty guidelines established by the U.S. Department of Health and Human Services and if the difference between the defendant's monthly net income and reasonable necessary expenditures is less than $500. At the time Miller completed his financial affidavit, the poverty level for a couple under the McLennan County plan (using the U.S. Poverty Guidelines for 2016) was $16,020. Miller's affidavit reflects an annual income of $18,864, which does not exceed 125% of the applicable poverty guideline--$20,025. Additionally, the difference between Miller's expenditures and his income is less than $500. The information provided by Miller in his affidavit was, therefore, sufficient to establish a *prima facie* case of indigency.

As noted, the trial court did not conduct a hearing on Miller's application for appointed counsel. The record supporting the trial court's findings consists of Miller's

---

[1] We "must take judicial notice if a party requests it and the court is supplied with the necessary information." TEX. R. EVID. 201(c)(2); *see also Perez v. Williams*, 474 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Appellant has provided copies of McLennan County's indigent defense plan and the 2016 U.S. Department of Health and Human Services federal poverty guidelines.

financial affidavit and some remarks made by the trial court at other hearings. Miller's handwritten affidavit includes the information he provided, as well as handwritten notes presumably made by the Indigent Defense Coordinator, who reviewed and notarized Miller's affidavit. The notes by the Coordinator clarify that Miller owned assorted assets, the value of which were unknown to him. Miller's other reported assets included his home, that he valued at approximately $95,000 and that was mortgaged, and a 1997 Chevrolet CK 1500 of unknown value. The trial court denied Miller's request for appointment of counsel on November 8, 2016 and, as previously noted, found that Miller's "income and/or assets are over allowable amounts."

At a hearing on December 2, 2016, that is identified as "Revocation Hearing," Miller and the trial court had the following exchange:

> THE COURT: Have you been denied a Court-appointed attorney?
>
> THE DEFENDANT: Yes, because, you know, they say (indiscernible) - -
>
> THE COURT: You are Burns Giles Miller, correct?
>
> THE DEFENDANT: Yes. And, you know, I've had this house for 13 years. My wife is in a nursing home. All I have is disability. I get $1,572 a month. I'm behind on my mortgage, which - -
>
> THE COURT: This is not a hearing, sir.
>
> THE DEFENDANT: Okay. All right. Well - -
>
> THE COURT: This is what you're going to do. You're either going to represent yourself, or you're going to try to hire an attorney.

THE DEFENDANT: I don't have the money to hire an attorney.

THE COURT: Have you tried to hire an attorney?

THE DEFENDANT: I can't.

THE COURT: Do you have a house that you could mortgage, that you could get a loan on or sell?

THE DEFENDANT: I can't - - I don't - - Your Honor, I have nowhere to go. And I've got - - we've got a house full of furniture that's given to us by our grandparents and parents, valuable antiques. I'm not going to give every - - just - -

THE COURT: That's what you've got to do. You've got to either get the money to hire an attorney or - -

THE DEFENDANT: I'm going to represent myself, Your Honor, yes.

THE COURT: All right.

At the revocation hearing on December 29, 2016, the following exchange occurred when the trial court inquired whether Miller wished to present any evidence in regard to punishment:

THE DEFENDANT: Well, I'm working right now in the middle of financial assistance on my mortgage so I don't lose my house. My wife has been in a nursing home three years. And all of our furniture, which is given down to us by grandparents, are valuable antiques. I mean, I would lose everything I've got.

THE COURT: Mr. Miller, you were given the opportunity to file a financial affidavit to request assistance of an attorney. You didn't list any of that.

THE DEFENDANT: I don't know anything about that, Your Honor.

THE COURT: You listed the value of the house as $95,000. Every time you were asked the question about the value of a vehicle or value of other assets, you put "unknown." You were not very cooperative, and that's why you didn't get a Court-appointed attorney.

At this point, I'm going to sentence you, as requested by the State, which is a very fair request because your probation was based on 365 days and a $4,000 fine. I'll follow the recommendation of the State and sentence you to jail for a period of 180 days.

You have the right to appeal this decision, Mr. Miller. And, based upon the information you provided to me today, I am going to appoint an attorney for you to confer with and decide whether you wish to appeal this matter.

It is unclear from the record what assets Miller possessed or their value, or why the trial court considered Miller uncooperative. However, based on the same information, the trial court appointed counsel to represent Miller for purposes of appeal.

Although we show some deference to a trial court's factual determinations, the trial court is not at liberty to disbelieve a defendant's allegations concerning his own financial status unless the court has "a reasonable, articulable basis for doing so, either because there is conflicting evidence or because the evidence submitted is in some manner suspect or determined by the court to be inadequate." *McFatridge v. State*, 262 S.W.3d 907, 911 (Tex. App—Waco 2008, *aff'd*, 309 S.W.3d 1 (Tex. Crim. App. 2010)) (quoting *Whitehead*, 130 S.W.3d at 876). The record does not reflect the reasons for the trial court's disbelief of Miller's affidavit. Nor does the record reflect that the trial court requested additional verification from Miller regarding his assets or held a hearing on the issue of his indigence. As noted in *Whitehead*, the disadvantages of erroneously ruling in a defendant's favor when evaluating his indigence are relatively innocuous, while

erroneously ruling against a defendant increases the risk that a truly indigent defendant will be deprived of counsel. *Whitehead*, 130 S.W.3d at 876. Additionally, the question of a defendant's indigence can be reconsidered if his financial status changes, and a "defendant can be required to reimburse the cost of legal services if it is later determined that he is able to do so." *Id.*; *see also* art. 26.04(p); TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2017).

We conclude that, based upon the record before us, the trial court abused its discretion in denying Miller's request for appointment of counsel. We therefore sustain Miller's sole issue. The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

REX D. DAVIS
Justice

Before Chief Justice Gray,*
    Justice Davis, and
    Justice Scoggins
    *(Chief Justice Gray concurs in the court's judgment to the extent it reverses and remands the trial court's judgment. A separate opinion will not be issued.)
Affirmed
Opinion delivered and filed April 4, 2018
Do not publish
[CR25]

