

NUMBER 13-06-00535-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

---

REBECCA JEAN CANN,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

---

On appeal from the County Court
of Kleberg County, Texas.

---

MEMORANDUM OPINION ON REMAND

Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion on Remand by Chief Justice Valdez

Appellant, Rebecca Jean Cann, was convicted of driving while intoxicated and sentenced to 180 days confinement. *See* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2011). The trial court suspended appellant's sentence, placed her on community supervision for eighteen months, and imposed a fine of $500 and court costs. We conclude that although part of the audiotaped reporter's record has been lost or

destroyed, the missing part of the record is not necessary to the appeal's resolution, and accordingly, we affirm the judgment.

## I. BACKGROUND

Kleberg County Sheriff's Deputy Joseph Kuntscher initiated a traffic stop of appellant's vehicle when he noticed that her vehicle's rear license plate was not illuminated. When he approached her vehicle, appellant partially rolled down her window, and a dog in her vehicle began barking and acting aggressively. Kuntscher testified that appellant appeared confused and incoherent. He instructed appellant to exit the vehicle, and she refused to do so. Kuntscher requested that animal control take custody of the dog, and after the dog had been taken into custody, appellant exited the vehicle after approximately two hours in the car. She refused to perform field sobriety tests, and Kuntscher arrested her for driving while intoxicated and resisting arrest. A jury found appellant guilty of driving while intoxicated but acquitted her of the charge for resisting arrest.

On original submission to this Court on direct appeal, appellant's court-appointed appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). Upon receiving the *Anders* brief, we reviewed the entire record,[1] counsel's brief, and

---

[1] Our original opinion stated specifically:

We note that the Kleberg County Court-at-Law has been granted permission to use an electronic recording system in criminal law matters, pursuant to an order dated June 11, 1997. We have diligently reviewed the audiotapes of the proceedings in this matter. Although we understand that limited resources may have necessitated this arrangement, we note that the audiotapes are difficult to understand, and may present special challenges to an incarcerated defendant's ability to review the record.

*Cann v. State*, No. 13-06-00535-CR, 2009 Tex. App. LEXIS 6696, at **3–4 n.10 (Tex. App.—Corpus Christi Aug. 26, 2009, pet. granted), *rev'd*, 2010 Tex. Crim. App. Unpub. LEXIS 155, at **1–2 (Tex. Crim. App. Mar.

2

appellant's pro se brief, and found nothing that would arguably support an appeal. Accordingly, we affirmed the judgment, however, on petition for review, appellant contended that portions of the audiotaped trial[2] were missing from the record, and the Texas Court of Criminal Appeals remanded the case for us to determine the status and availability of the entire trial record and the effect, if any, the record has on our reasoning and analysis in this case. *See Cann v. State*, No. 13-06-00535-CR, 2009 Tex. App. LEXIS 6696 (Tex. App.—Corpus Christi, August 26, 2009, pet. granted), *rev'd*, 2010 Tex. Crim. App. Unpub. LEXIS 155, at **1–2 (Tex. Crim. App. Mar. 17, 2010).

In the petition for discretionary review, appellant's counsel stated that she "has at varying times been provided with six tapes and then later with five tapes." Our internal records indicate that five audiotapes were originally filed with this Court in 2007. As counsel correctly notes, the court recorder's logs contained in the clerk's record identify three audiotapes, which recorded appellant's two-day trial on July 11 and 12, 2006. The recorder's log also identifies two trial exhibits: (1) State's Exhibit 1, a videotape of the stop of appellant's vehicle and her subsequent arrest; and (2) State's Exhibit 2, the arresting officer's statutory warning form.[3] Appellant's petition for discretionary review

---

17, 2010).

[2] Texas Rule of Appellate Procedure 34.6(a)(2) provides:

Electronic Recording. If the proceedings were electronically recorded, the reporter's record consists of certified copies of all tapes or other audio-storage devices on which the proceedings were recorded, any of the exhibits that the parties to the appeal designate, and certified copies of the logs prepared by the court recorder under Rule 13.2.

TEX. R. APP. P. 34.6(a)(2).

[3] This Court earlier reviewed State's Exhibit 1, the videotape of the stop and arrest. Although it is not included in the record on remand, we have determined that State's Exhibits 1 and 2 are in the possession of the trial court.

contended that "both sets of tapes stop being audible (other than tape hiss) after the morning break the second day of trial before the parties rest."  The court of criminal appeals determined that:

> The tape-recorded record forwarded to this Court by the court of appeals ends early on the second day of trial and does not contain a complete record of the trial.   It is unclear if portions of the trial proceedings were not recorded or if the court of appeals simply received an incomplete copy of the record.
>
> If a complete record of the trial is available, the court of appeals can conduct the independent review required by *Anders.*   If not, the court will have to determine if the lack of a complete trial record is an arguable issue that would support an appeal.

*Cann*, 2010 Tex. Crim. App. Unpub. LEXIS 155, at **1–2.

We have again reviewed the five audiotapes in the record before us.   Tape 5, side "B" is audible until the tape ends (according to the recorder's log) between 8:54 a.m. and 9:00 a.m. on the second day of trial, July 12, 2006.   We note that this is inconsistent with appellant's description in her petition that "[t]he court recorder's audiotape record on the morning of the second day is audible until the trial resumes after the 9:29 morning break.  After that point, the tape is no longer audible."[4]  It is, however, consistent with the court of criminal appeals's characterization that the tape-recorded record "ends early on the second day of trial and does not contain a complete record of the trial."

On remand, the court of criminal appeals instructed us "to determine the status and availability of the complete trial record."   Accordingly, we abated the appeal and

---

[4] The recorder's log reflects that at the close of the evidence, the jury exited the courtroom at 9:26 a.m.   At 9:29 a.m., a "break" in the proceedings occurred.   Immediately after 9:29 a.m., the log reflects "Tape Three is to Begin."

4

remanded the cause to the trial court. We ordered the trial court to determine if appellant was indigent, and to appoint new appellate counsel to represent her, if desired.[5] We directed the trial court to conduct a hearing to determine whether:

(1) a complete record of appellant's trial is available;

(2) a significant portion of the recording has been lost or destroyed or is inaudible for reasons other than the fault of the appellant;

(3) the lost or destroyed portion of the record is necessary to the resolution of the appeal; and

(4) the parties can agree on a complete reporter's record.

We further ordered the trial court to: (1) create a supplemental reporter's record of this hearing; (2) execute findings of fact and conclusions of law addressing the matters listed above; (3) cause its findings and conclusions to be included in a supplemental clerk's record; and (4) cause the supplemental reporter's record and supplemental clerk's record to be filed with the Clerk of this Court.

The trial court held a hearing on remand in accordance with our instructions. The Honorable Martin Chiuminatto had presided over the trial of this case; however, his term of office ended in 2010, and the Honorable Guadalupe O. Mendoza presided over the hearing on remand. Judge Chiuminatto neither appeared at the hearing nor provided testimony. The county attorney, Delma Rios Salazar, had previously recused herself from this matter, and the trial court had appointed John Hubert as prosecuting attorney

---

[5] In this regard, we note that appellant, who has worked in the legal field, had indicated a desire to proceed pro se at trial; however, the trial court appointed Eric Flores to represent her at trial. Frank Alvarez served as appellant's appointed counsel on direct appeal. After the appeal to this Court, appellant retained Patricia Shackelford, who filed the petition for discretionary review on a pro bono basis. Shackelford subsequently requested and received permission to withdraw from representation. On remand from this court, the trial court appointed Randall E. Pretzer to represent appellant. Pretzer thereafter withdrew and was replaced by on appeal by Danice Obregon.

5

pro tem for the State.

Although the trial court sent notice of the hearing to Cann at her last known address, she did not appear. In this regard, we note that by affidavit, which is not part of the appellate record, appellant asserts that she "never received notice of the hearing because the notice was sent to an incorrect address, and therefore, I did not attend the hearing." The hearing on remand contains the following colloquy regarding appellant's absence from the hearing:

> Hubert: Your Honor, this is John Hubert for the State. Your Honor, I — I notice that the defendant is not in court today, but I do notice her attorney. I would ask the Court to take judicial notice of the Court's file that notice was given for her to appear and to ask if the Court has heard any word from her regarding her appearance?
>
> Court: Let the record reflect that my court sent out notification to Ms. Cann on February 7, 2011, to 703 Shelton, Kingsville, Texas, 78363, which was a previous address that Ms. Cann had. Because on February 2nd, 2011 this court sent notice to Ms. Cann at 8261 South Norvell Drive in Dallas, Texas, 75227-5407, notifying her of today's date, and that letter was returned unserved.
>
> The only other address that we have for Ms. Cann was the 703 Shelton, and that has not returned.
>
> Hubert: Yes, your Honor. That being the case, I would ask the Court deem her presence waived, and that we continue with the hearing as scheduled. Your Honor, this is the second time we've had this hearing scheduled. The second time we've had witnesses come in, and I believe at this point instead of [wasting] the Court's time that we continue forward.
>
> Court: It is — it is so noted that the defendant is not present. [Bailiff], will you call Rebecca Jean Cann's name —
> . . . .
>
> Bailiff: Judge, I called her name three times. No answer is the same.
>
> Court: Court has called Rebecca Jean Cann's name three times, and she is not present. We will deem her presence waived.

6

Hubert: Your Honor, I believe that there are several addresses for the defendant, not the least of which is a new one that I've just been made aware of, which is 8162 South Norvell Drive, Dallas, Texas 75227-409 [sic].

I note that there is a letter with the Community Supervision Office with a very similar address to that. The only difference is — is on her letter that she gave to the Community Supervision department, she gave a different — she gave a, the defendant herself, gave a different zip code.

Court: Well, the difference between the Norvell address that the Court sent to was 8261 Norvell Drive, 75227-5407.

Hubert: And — and the one on her — on her letter to Community Supervision shows 8162 South Norvell Drive, and gives a zip code of 7727---227 [sic]. We believe that zip code to be incorrect.

Court: Okay. So noted.

Okay. Mr. Hubert.

Hubert: And your Honor, just to clarify that. I believe that part of the confusion over her address is her giving the incorrect addresses to the Court, at least in printed materials.

The hearing continued without appellant's presence and without objection by appellant's appointed counsel. By pro se letter, appellant subsequently complained to this Court that she failed to receive notice of the hearing date.

At the hearing, attorneys for appellant and the State stipulated that a complete record of the trial is not available and that the missing part of the record included the closing arguments, the charge conference, any objections to the charge, and whether charge objections, if any, were overruled or sustained. The parties further informed the trial court that they could not agree on a complete reporter's record and did not agree that the lost or destroyed portion of the record is necessary to the resolution of the appeal. Appellant's counsel contended that the missing portions of the record were necessary to

7

the resolution of the appeal, and the State contended otherwise.

The State announced its intent to call witnesses, whereupon appellant's counsel objected to the introduction of testimonial evidence regarding the trial on grounds that too much time had passed since the trial, and the issues would be "stale" because of the passage of time. The trial court overruled this objection, and the parties heard testimony from various witnesses as detailed herein.

At the hearing, Alfred Isassi testified that, at the time of the trial, he was the elected county attorney for Kleberg County, and he tried appellant for the offenses of driving while intoxicated and resisting arrest. In preparation for his testimony, he reviewed his original prosecutor's file to refresh his memory about the case. Isassi testified that appellant initially requested to proceed pro se, but the trial court appointed Eric Flores to assist her. According to Isassi, Flores tried the case. The trial was recorded utilizing a tape recording system that was routinely used to record trials.

Isassi testified that he could not "verbatim" remember what he said in closing arguments, but he knew that he focused on the videotape of the traffic stop taken by the sheriff's deputy, Kuntscher, who was the officer at the scene, from his vehicle. Isassi testified that, during closing arguments, he argued that the jury should review the videotape and Kuntscher's testimony regarding appellant's demeanor and the two-hour delay from the time the traffic stop was initiated to the time appellant exited her vehicle. On the videotape, appellant indicated that she was an attorney and that she did not want to exit her vehicle. Isassi further testified that there was a barking dog in appellant's vehicle and an animal control officer was called to extract the dog. Isassi testified that he

8

did not recall if any objections were made during his closing arguments.

Isassi testified that he did not recall if there were any contested issues regarding the charge. At that time, the trial court routinely prepared a draft charge, and in the instant case, the charge included the two offenses of driving while intoxicated and resisting arrest. Isassi testified that Flores objected to the charge on resisting arrest, but that was the only objection to the charge. Issasi further stated that the jury found appellant guilty of driving while intoxicated but not guilty of resisting arrest.

Isassi testified that the case was not tried to the jury on punishment because the parties reached an agreement regarding punishment. The judge approved the agreement with a 180-day sentence, suspended with a term of community supervision of eighteen months, plus a fine.

Estella Alegria, the court coordinator and court recorder at the time of the trial, also testified. According to Alegria, the trial court judge used the court recorder, and Alegria on occasions stood in as a court reporter and would make a court log rather than a court transcript. A court log is a recording, but not a transcript, which contains key phrases or key questions, and serves as a reference to locate specific parts of the recordings or testimony.

In this case, Alegria testified that she followed normal procedures with regard to recording the transcript of the trial. When she made audio recordings, she did not listen to the recordings to ensure that they were audible or clear. Alegria believed that she discovered that parts of the tapes at issue herein were inaudible when she was notified by the court of appeals. She was unable to say whether or not the trial was recorded or

9

whether part of the recording was misplaced because "the system [was] so old it had its glitches." According to Alegria, the equipment may not have recorded the trial, the equipment may have made recordings of poor quality, or the tapes were subsequently lost. She testified that there had been problems with the trial audiotapes in the past, and the tape recording equipment had been repaired on one prior occasion when it malfunctioned. To her knowledge, appellant committed no bad acts or malfeasance with regard to the recordings.

Alegria testified that she did not recall whether Frank Alvarez, appellant's court-appointed lawyer for the initial appeal, listened to Alegria's original copies of the tapes or obtained copies of the audiotapes to prepare appellant's appeal. According to Alegria, it was not customary for defense counsel to check out the tapes, and that counsel typically either listened to the original trial tapes in her office or obtained copies of the tapes. Alegria stated that she did not keep records regarding whether attorneys listened to the original tapes or whether she provided them with copies of tapes. Alegria testified that upon appeal, she would transmit her log and the tapes to the appellate court.

Flores testified that he represented appellant at trial. According to Flores, appellant had requested that she be allowed to proceed pro se, however, Judge Chiuminatto appointed him as counsel approximately a month prior to trial. According to Flores, appellant cooperated with him and provided him with input and information on her case.

Flores testified that he did not file any objections to the charging instruments; however, he recalled objecting to a proposed instruction in the charge about having to

obey a lawful order of a peace officer, pertaining to the charge of resisting arrest. According to Flores, the arresting officer asked appellant to exit her vehicle, but she did not want to do so, and the State was arguing that her actions constituted resisting arrest. Flores could not recall if the trial court overruled his objection or not; however, Flores testified that appellant was found not guilty of resisting arrest. Flores testified that he was "pretty sure" that he did not make any other objections to the charge.

Flores testified that he did not recall making any objections during closing arguments. According to Flores, he generally does not object during closing arguments unless the argument is egregious, and he typically remembers "usually something pretty bad." Flores testified that he reached an agreement with the State regarding punishment, but even if he had not, he would have submitted punishment to the trial court rather than the jury. According to Flores, after trial, he did not think there were any appealable issues.

Alvarez, who represented appellant on direct appeal, testified that Alegria provided him with copies of the audiotapes of trial, and he listened to the audiotapes in his car because he lacked other means to play the audiotapes. Alvarez testified that if anything had been missing from the audiotapes, it would have been easily identifiable and he would have notified the court coordinator. He did not recall that any of the parts of trial were missing from the audiotapes.

On appeal, Alvarez filed an *Anders* brief and a motion to withdraw. He testified that he sent appellant the actual tapes that he had listened to and used because he did not have a way to make copies of the tapes. Alvarez informed appellant that he did not

11

find error in the trial of her case, but he nevertheless encouraged her to pursue any alleged error on her own with regard to her pro se brief. Alvarez testified that he was in contact with appellant during the prosecution of the appeal by both email and telephone. According to Alvarez, they got along well and the lines of communication were always open by telephone or email. Alvarez testified that he also spoke with attorney Patricia Shackelford, who was representing appellant on a pro bono basis for her petition for discretionary review, to go over the case; however, he did not discuss the audiotapes with Shackelford.

Alvarez testified that in his opinion, he did not find anything in the record that would support an appeal. According to Alvarez, appellant wished to raise appellate issues contending that she received ineffective assistance of counsel specifically pertaining to Flores's failure to object at certain points during the trial. Alvarez spoke to Flores and Isassi about these allegations, reviewed the record, and concluded that the alleged omissions represented Flores's trial strategy. Alvarez thus informed appellant that he did not think these issues were grounds for appeal. Alvarez testified that he was aware that appellant was employed in the legal field and was familiar with the law, and so he was "very complete and careful to make sure that she understood what I was thinking and how I was getting there."

In short, Alvarez spoke with appellant, reviewed the audiotapes, and spoke with Isassi, Flores, and Shackelford about the case. Alvarez reiterated that, in his professional opinion, he saw no harmful error in the trial of this case and there was no legitimate reason to file an appeal. Alvarez testified that he had been practicing criminal

law for fifteen years. He knew that appellant was unhappy with the verdict and was adamant about appealing the judgment. Alvarez testified that he was aware that she was disappointed in the outcome and that was one of the reasons why he communicated with appellant and Shackelford extensively to assist them. "And if they saw something that I didn't see or I didn't catch that, you know, whatever I could do to provide assistance for them and—and—and that's exactly what I did."

After the hearing, the trial court entered the following findings of fact and conclusions of law:

FINDINGS OF FACT

1)      The missing portions of the transcript occur from the charging conference and submission of Charge to the Court after presentation of evidence, the closing argument on the guilt/innocent phase, sentencing and the punishment phase.

2)      During the missing portions of the recording, there were no objections by Defense Counsel other than to the charge of resisting arrest during the charging conference.

3)      The jury found the Defendant guilty of DWI and not guilty of resisting arrest.

4)      There were no objections by Defense Counsel during closing arguments.

5)      After the finding of guilt, both sides submitted to the Court a proposed agreement on punishment, which the Court accepted and rendered a judgment thereon.

6)      Appellant's first Appellate attorney, Mr. Frank Alvarez, received and reviewed a complete copy of the record (tapes) from the County Court at Law Manager, Estella Alegria.

7)      Mr. Alvarez spoke with five (5) different people regarding reasons for the appeal, found no legitimate grounds for an appeal, and filed an *Anders* brief.

13

8)      Mr. Alvarez sent his copy of the tapes to his client, Mrs. Cann.

9)      The County Court at Law was the respository of the originals of the tapes.

10)     There were no complete copies of the tapes with the County Court at Law to provide to the Appellant.

11)     No log was kept when tapes from the County Court at Law were checked out, copied or played.   The system of storing the tapes of hearings in the County Court at Law was prone to confusion.

12)     The system of audio recording the hearings in the County Court at Law was antiquated, [and] prone to mechanical failure.

CONCLUSIONS OF LAW

1)      Is a complete record of appellant's trial . . . available?   Answer:   No.

2)      Is a significant portion of the recording lost or destroyed or is inaudible for reasons other than the fault of the appellant?   Answer: There is no evidence that a significant portion of the recording is lost. However, there is no proof that the lost portions of the recording are the fault of the appellant.

3)      Is the lost or destroyed portion of the record necessary to the resolution of the appeal?   Answer:   No.   Since the portion of the recording lost is not significant, then the lost portion is not necessary for the resolution of the appeal.

4)      Can the parties agree on a complete reporter's record?   Answer: The parties cannot agree on a complete reporter's record.

After the hearing on remand, we ordered the parties to provide the Court with supplemental briefing limited solely to the issues raised by the court of criminal appeals, and the supplemental briefs have been filed on behalf of appellant and the State.

## II. ANALYSIS

An appellant is entitled to a new trial due to a missing record when:   (1) the

14

appellant has timely requested the reporter's record; (2) a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed without the appellant's fault; (3) the lost or destroyed portion of the reporter's record or exhibit is necessary to the appeal's resolution; and (4) "the lost [or] destroyed . . . portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit."  TEX. R. APP. P. 34.6(f).

Where an appellant may meet the other requirements of Rule 34.6(f), but fails to show the missing portion of the record is necessary to his appeal's resolution, a new trial is not required.  *Routier v. State*, 112 S.W.3d 554, 571–72 (Tex. Crim. App. 2003); *Issac v. State*, 989 S.W.2d 754, 757 (Tex. Crim. App. 1999).  The question of whether a missing portion of the reporter's record is necessary to the appeal's resolution is essentially a harm analysis.  *Routier*, 112 S.W.3d at 571; *Issac*, 989 S.W.2d at 757.  If the missing portion of the record is not necessary to the appeal's resolution, then the loss of that portion of the record is harmless and a new trial is not required.  *Routier*, 112 S.W.3d at 571–72; *Issac*, 989 S.W.2d at 757.  Rule 34.6(f) issues "should be viewed from the appellant's standpoint, and any reasonable doubt resolved in favor of the appellant."  *Routier*, 112 S.W.3d at 570–71.  Nevertheless, speculation that a missing record may memorialize error does not satisfy the necessity requirement of Rule 34.6(f).  *Id.*  The appellant has the burden of establishing that the missing portion of the record is "necessary to the appeal's resolution."  *Issac*, 989 S.W.2d at 757; *see also Alvear v.*

15

*State*, 25 S.W.3d 241, 245 (Tex. App.—San Antonio 2000, no pet.).

As stated previously, the parties have stipulated that a complete record of the trial is not available. Accordingly, we determine if the lack of a complete trial record is an arguable issue that would support an appeal. *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005). The trial court concluded, and the parties do not contend otherwise, that the lack of a complete record is not the appellant's fault. *See* TEX. R. APP. P. 34.6(f)(2). There appears to be no disagreement that the lost or destroyed record cannot be replaced by the agreement of the parties. Thus, the remaining issues in determining whether appellant is entitled to any remedy under Rule 34.6, is whether a "significant portion of the recording has been lost, or destroyed or is inaudible," and whether that portion of the record "is necessary to the appeal's resolution." *Id.* 34.6(f)(2),(3). As an initial matter, we note that we disagree with the trial court's conclusion that the missing portion of the record is not "significant" insofar as the missing portion encompasses the closing arguments, the charge conference, any objections to the charge, and whether charge objections, if any, were overruled or sustained, and thus, a substantial portion of the trial is missing. thus, we turn our attention to whether or not the missing portion is "necessary to the appeal's resolution." *Id.*

By her supplemental briefing following remand, appellant asserts multiple reasons why the missing record is necessary for the appeal's resolution. Appellant asserts that trial counsel provided ineffective assistance of counsel because he failed to investigate the lack of probable cause for the traffic stop, the reasons for appellant's delay in exiting her vehicle, and various discrepancies in testimony provided by the State's witnesses.

16

Appellant further contends that counsel provided ineffective assistance because he failed to present a defense and because he failed to object to the State's imposition of facts outside the record in its closing argument. Appellant also asserts that there was improper jury argument and charge error. Appellant concedes, however, that she is "unable to adequately evaluate potential appellate issues because of the missing portion of the record."

Appellate counsel supports each of these contentions with an affidavit provided by appellant which is attached to her brief. The affidavit upon which appellant now relies was neither presented to the trial court nor was it entered into evidence, and is not part of the appellate record in this case. Accordingly, we could not predicate any appellate relief upon the affidavit even if it established error. *Leza v. State*, 351 S.W.3d 344, 362 (Tex. Crim. App. 2011); *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) ("An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal." (footnotes omitted)); *Thompson v. State*, 612 S.W.2d 925, 928 (Tex. Crim. App. 1981); *George E. Dix & John M. Schmolesky*, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 55:48 (3rd ed. 2011), at 116 ("Perhaps the most basic characteristic of the appellate record is that it is limited to matters before the trial court. An appellate court may not consider such extra-record materials as affidavits attached to appellate briefs.").

Appellant argues, for instance, that the lost portion of the record is necessary to the resolution of the appeal because she is unable to determine whether counsel was ineffective. In 2001, the Texas Court of Criminal Appeals seemed to lean toward a rule

17

that missing records will readily be determined to be necessary for resolution of an ineffective-assistance-of-counsel claim. *See Kirtley v. State*, 56 S.W.3d 48, 49–52 (Tex. Crim. App. 2001). However, a year later, the court of criminal appeals held that speculation that a missing record may memorialize error does not satisfy the necessity requirement of Rule 34.6(f). *Routier*, 112 S.W.3d at 570. The court held that "[t]he suggestion that instructions may have been erroneous, without more, does not make that portion of the record necessary to her appeal." *Id.* Instead, the rule requires an appellant to do more than merely suggest the missing portion of the record reveals reversible error in order for review of that portion to be necessary. *See Issac*, 989 S.W.2d at 757 ("Although the lack of a record may in some cases deprive an appellate court of the ability to determine whether the absent portions are necessary to the appeal's resolution, an automatic rule of reversal is not justified.").

In short, appellant contends that the missing portion of the record may reveal that trial counsel committed error. Although conjecture may have been sufficient in *Kirtley*, it is not sufficient under *Routier*. It is not necessary for us to view the missing portion of the record to resolve a speculative claim that the portion may or may not reveal trial counsel's ineffectiveness. *See Routier*, 112 S.W.3d at 570; *Issac*, 989 S.W.2d at 757; *Nava v. State*, Nos. 14-10-00527-CR, 14-10-00528-CR, 14-10-00530-CR, 14-10-00531-CR, 2012 Tex. App. LEXIS 6807, at **32–39 (Tex. App.—Houston [14th Dist.] Aug. 16, 2012, no pet. h.); *Jimenez v. State*, 307 S.W.3d 325, 334 (Tex. App.—San Antonio 2009, pet. ref'd).[6] Further, it is unlikely the missing portion of the record would establish that

---

[6] The First District Court of Appeals recently followed *Kirtley v. State*, 56 S.W.3d 48, 52 (Tex. Crim. App. 2001) for the proposition that a lost or destroyed portion of a reporter's record, from which an

18

appellant's trial counsel lacked viable strategic reasons for his actions. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) (noting appellate courts are to presume counsel provided effective assistance and, in "the majority of cases, 'the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions.'"). Accordingly, we hold appellant has not met her burden of proving that the missing portion of the record is necessary to resolution of her appeal. We note, however, that our conclusion that appellant is not entitled to relief under Rule 34.6(f) does not preclude her from complaining about the missing portion of the record in future proceedings.

Appellant further claims that there is charge error pertaining to the following jury instruction, which reads in part, "[a] person may not willfully fail or refuse to comply with a lawful order or direction of a police officer." Appellant urges error with regard to the lack of a record, insofar as it is not known whether or not counsel objected to the charge, and contends that the instruction altered the relevant standard of proof with respect to this

---

ineffective assistance of counsel claim might be raised, constitutes a portion of a record that is "necessary to the appeal's resolution." *Wilson v. State*, 366 S.W.3d 335, 339–40 (Tex. App.—Houston [1st Dist.] 2012, no pet.). In *Wilson*, appellate counsel filed an *Anders* brief acknowledging that a portion of the reporter's record had been lost due to technical difficulties, but did not discuss the rules and authorities pertaining to lost or destroyed records and instead averred that he had "conferred" with appellant and trial counsel "on several occasions" and there is "no indication that the missing portion of the record is necessary to the resolution of this appeal" and "no basis for predicating an appeal." *Id.* at 338. Without discussing *Routie*r or *Isaac*, the Houston court concluded that it need not decide, with certainty, that any complaint arising from the fact that the reporter's record in this case had been lost or destroyed would prove to be meritorious, but only that such an issue warranted further development by counsel on appeal. *Id.* at 340. Accordingly, the court concluded that there was at least an arguable ground for appeal arising from the fact that the reporter's record had been destroyed, so the court struck the *Anders* brief, abated the appeal, and remanded the cause. *Id.* We conclude that *Wilson* is distinguishable from the instant case given that the instant cause includes a well-developed record on remand regarding the trial proceedings and the record thereof, and further, to the extent that *Wilson*'s analysis does not include reference to *Routier* or *Isaac*, decline to follow it.

charging language. As stated previously, Flores testified that he objected to this portion of the charge. Any alleged error with regard to this instruction, however, was rendered moot when the jury acquitted appellant of the charge of resisting arrest.

With regard to appellant's other claimed errors pertaining to closing argument, any such contentions, even "viewed from the appellant's standpoint, and any reasonable doubt resolved in favor of the appellant, " constitute mere speculation that the missing record may memorialize error, and such speculation fails to satisfy the necessity requirement inherent in Rule 34.6(f). *Routier*, 112 S.W.3d at 570–71.

### III. CONCLUSION

Based upon testimony on remand, appellant's original appointed counsel, who filed the original *Anders* brief in this case, did so after reviewing the complete record of trial in this matter. This Court reviewed the entire record of trial in this matter, although on original submission, we noted that "the audiotapes are difficult to understand." *Cann*, 2009 Tex. App. LEXIS 6696, at *4 n.10. The issues pertaining to the missing parts of the record have been fully fleshed out by hearing on remand. While it is clear that witnesses's memories have been blurred by the passage of time, we conclude that the trial court's findings and conclusions on remand are based on legally sufficient evidence. Accordingly, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b).
Delivered and filed the
18th day of October, 2012.

20