

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00185-CR

ERIC LEE MILLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 18th District Court
Johnson County, Texas
Trial Court No. F42739

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After a Johnson County[1] jury found Eric Lee Miller guilty of possession of less than one gram of a controlled substance and he was sentenced to two years in state jail and assessed a $5,000.00 fine,[2] a post-trial hearing yielded a decision that Miller would not receive his requested eighty-four days in pre-trial jail time credit. Miller urges on appeal that he should have been credited eighty-four days for time served and that evidence should not have been admitted concerning Miller's gang affiliation. We modify the judgment to credit Miller with the eighty-four days of jail time and affirm the judgment, as modified, because (1) Miller's prima facie case of indigency resulting in the eighty-four days of jail time was unrebutted by the State and (2) Miller's gang-evidence point on appeal was not preserved for our review.

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]On April 1, 2008, Detective Brad Bollin with the Johnson County Sheriff's Office stopped the truck that Miller was driving because the truck was not displaying any rear license plate. During the stop, Bollin discovered that Miller had outstanding warrants and took him into custody.

Miller and Renae Casper had borrowed the truck that day intending to use it to clean out Renae's late husband's automotive shop. The bed of the truck was full of "trash, scrap, [and] junk." After Miller was arrested, Deputy Richard Hogan arrived to assist Bollin, and the truck and its contents were searched and inventoried.

During the inventory search, Hogan found a toolbox in the bed of the truck. Inside the toolbox, Hogan found a sunglasses case containing a plastic baggie, within which were a spoon, syringes, and what was later determined to be 0.49 grams of methamphetamine. A fingerprint matching Miller's left index finger was found on the spoon, but Bollin admitted that he did not check the sunglasses case, the plastic baggie, or the syringes for fingerprints.

Miller was indicted for possession of more than one gram, but less than four grams, of a controlled substance and theft in an amount between $1,500.00 and $20,000.00. At trial, the State abandoned the theft charge and chose to proceed only on the lesser-included offense of possession of less than one gram of a controlled substance. Miller pled not guilty, and the case proceeded to a Johnson County jury trial.

*(1)    Miller's Prima Facie Case of Indigency Resulting in the Eighty-Four Days of Jail Time Was Unrebutted by the State*

Miller argues that he was improperly denied credit for time served before his trial and conviction. We agree.

In all criminal cases, the defendant is entitled to credit on his sentence for the time he spent in jail pending trial "from the time of his arrest and confinement until his sentence by the trial court." TEX. CODE CRIM. PROC. ANN. art. 42.03, § 2(a) (West Supp. 2017). However, under former Article 42.12, Section 15(h)(2)(A), now recodified as Article 42A.559(c)(1), a judge "*may* credit against any time a defendant is required to serve in a state jail felony facility time served in a county jail from the time of the defendant's arrest and confinement until sentencing by the trial court." TEX. CODE CRIM. PROC. ANN. art. 42A.559(c)(1) (West Supp. 2017) (emphasis added).

Because the conflict between these provisions cannot be reconciled, Article 42A.559(c)(1) prevails because a specific statute controls over a general statute. *See* TEX. GOV'T CODE ANN. § 311.026(b) (West 2013); *Busby v. State*, 984 S.W.2d 627, 629 (Tex. Crim. App. 1998); *Ex parte Bates*, 978 S.W.2d 575, 577–78 (Tex. Crim. App. 1998). However, a defendant who receives the maximum state jail felony sentence is constitutionally entitled to credit for time served in county jail before sentencing "if they had been unable to post bond due to their indigence."[3] *Harris*, 946 S.W.2d at 80. The logic behind this holding is that if a defendant is indigent, he cannot obtain bail, and if he receives the maximum sentence, he will have been incarcerated for more than the

---

[3]Though *Ex parte Harris* involved a guilty plea, it nevertheless is applicable where, as here, the defendant is convicted after a jury trial. *Harris* was based in part on an earlier case involving credit for time served before the defendant's jury trial. *Ex parte Harris*, 946 S.W.2d 79, 80 (Tex. Crim. App. 1997) (citing *Caraway v. State*, 550 S.W.2d 699, 700–01, 705 (Tex. Crim. App. 1977)).

maximum available punishment.  Thus, the failure to provide credit is a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.  *See* U.S. CONST. amend. XIV.

Here, Miller was convicted of a state jail felony and received the maximum sentence of two years, but the trial court denied his request for credit for the eighty-four days he spent in jail during the pendency of this case.  In order to determine if he was entitled to credit, we must assess whether Miller was indigent for purposes of obtaining a bail bond.  *See Harris*, 946 S.W.2d at 80.

Indigency is determined on a case-by-case basis, taking into account factors such as the defendant's income, assets, property owned, outstanding obligations, necessary expenses, number and ages of those dependent on the defendant, and spousal income that is available to the defendant. *McFatridge v. State*, 309 S.W.3d 1, 5 (Tex. Crim. App. 2010); *Whitehead v. State*, 130 S.W.3d 866, 875 (Tex. Crim. App. 2004).  If a defendant makes a prima facie showing of indigency, the burden shifts to the State to produce evidence that the defendant is not indigent. *Whitehead*, 130 S.W.3d at 874.  If a prima facie case is established, a reviewing court can uphold a trial court's determination of non-indigence only when the record contains evidence supporting that determination. *McFatridge*, 309 S.W.3d at 6.  A trial court should accept a defendant's sworn allegations of indigency unless there is a reasonable, articulable basis for disbelieving the evidence. *Whitehead*, 130 S.W.3d at 876.

During the nine-year pendency of this case, Miller posted five different bonds:  a $5,000.00 bond in April 2008, a $10,000.00 bond in May 2011, a $50,000.00 bond in June 2011, and a $100,000.00 bond in February 2017.  The parties agreed that, through that time, Miller had spent

4

a total of eighty-four days in jail, including more than seventy days from December 2016 through February 2017. At the indigency hearing, Miller testified that he made the bonds in this case due to financial help from other people or the receipt of an income tax refund. Miller testified that he only spent those eighty-four days in jail because he was financially unable to post bond, as he and his wife, Casper, "had no money at the time."

Miller and Casper had been living with his two sons, Casper's son, and Casper's mother and sister. He and Casper were their sole sources of support, as "they [did not] have any income," and all together they "just barely ma[d]e ends meet." On cross-examination by the State, Miller admitted that, previously and until he started experiencing some health problems, he had worked as a mechanic, making "[m]aybe" $22,000.00 per year, which he characterized as "a lot more money" than he was making then, mowing lawns.

Here, the State failed to rebut Miller's prima facie case of indigency. Miller's testimony established that he and his family were barely making ends meet and that, during times Miller was free from custody, he mowed lawns for a living, had little income, and relied on the financial assistance of others in order to post the bonds in this case. While he admitted that he once worked as a mechanic, there is no evidence that any such employment occurred or that the resulting income was earned at any time near any of the eighty-four days he spent in jail. Miller had retained counsel throughout the trial proceedings, but his second attorney withdrew in part because Miller "failed to meet his financial obligations," and a defendant can be found indigent for purposes of making bond and not indigent for purposes of appointed counsel. *See id.* at 878 (defendant can be indigent for one purpose and non-indigent for another). Furthermore, Miller only spent about a week in

5

jail through posting the first four bonds, but he spent more than two months in jail before posting the final bond in this case. That is evidence that, if he could have afforded to make the final bond more quickly, he would have done so. Therefore, there is no evidence in the record to support a reasonable, articulable finding that, during the eighty-four days he spent in jail, Miller was financially able to post bond. *See id.* at 874. Accordingly, we sustain this point of error, and pursuant to this Court's power to "modify the trial court's judgment," we modify the judgment in this case to reflect eighty-four days of jail time credit. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

*(2)     Miller's Gang-Evidence Point on Appeal Was Not Preserved for Our Review*

Miller also argues that the trial court erred in admitting gang affiliation evidence during the guilt/innocence phase of the trial because it was irrelevant.

Here, on cross-examination by the State, Miller testified that the tattoo on the back of his right arm that says "wood" means "pecker wood," which, he claimed, means that he is white. He admitted that prison was a rough place and he did what he had to do to get through it, but he denied that the tattoo was an Aryan Brotherhood or white supremacy tattoo.

The State later called Steve Groppi, a police officer with the Fort Worth Police Department assigned to the gang intelligence unit. Groppi testified that, through his work in the gang intelligence unit, he was familiar with indications of gang membership, including tattoos. Miller examined Groppi on voir dire, and Groppi testified that his testimony regarding tattoos and gang membership was based on his training, speaking with other officers, and "[i]nterviews of people who have the tattoos on them." Miller objected to Groppi's proposed "testimony about gang

6

affiliation," arguing, "[W]hat this witness thinks he knows is [speculation] based on hearsay." The trial court overruled the objection and allowed Groppi to testify "based on his training, education and experience."

Earlier, Miller had admitted that he had the word "wood" tattooed on his right arm, and a photograph admitted into evidence showed that Miller had the word "hard" tattooed on his left arm. Groppi testified that a person having both of those tattoos "would be someone true to the white race or true to the white." He testified that the tattoo on Miller's stomach that said "Eric" stood out to him because each letter in the name contained two lightning bolts, which were symbols of the "Nazi SS storm troopers from World War II." The lightning bolts symbol is also seen "with Aryan Brotherhood and Aryan Circle gangs in the prison system here in Texas." Groppi testified that "looking at these tattoos as a whole," they would be consistent with someone who has "white supremacy type beliefs."[4]

A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005). As stated in *Resendez v. State*, 306 S.W.3d 308 (Tex. Crim. App. 2009),

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

---

[4]Miller was later called to the stand again, where he explained that, when he went to prison in the 1990s, "wood" meant he was white and the "hard" tattoo meant he was dependable, but that their meaning had drastically changed in the decades since then. Miller claimed that the shapes in the name "Eric" tattooed across his stomach were just a font. He denied having any kind of gang relation or affiliation since he was released from prison.

*Id.* at 312 (quoting TEX. R. APP. P. 33.1(a)(1)(A)). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Id.* As explained in *Resendez*,

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

Here, Miller argues that the evidence of his "tattoos and alleged gang affiliation was irrelevant in the guilt-innocence portion of the trial" and that the trial court's "admission of such evidence over [his] objection was error." However, at trial, Miller objected on the grounds of hearsay and speculation. Because his point of error on appeal does not comport with his objections at trial, this point of error was not preserved for our review. *See Wilson*, 71 S.W.3d at 349.

We modify the trial court's judgment to provide Miller credit for eighty-four (84) days of pretrial jail time and affirm the judgment, as modified.

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 28, 2018
Date Decided:        March 22, 2018

Do Not Publish

8