**Affirmed and Majority and Dissenting Opinions filed September 22, 2020.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-19-00254-CR

---

**ZACHERY JAMES HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 253rd District Court
Chambers County, Texas
Trial Court Cause No. 18426**

---

### MAJORITY OPINION

In this appeal from a conviction for aggravated assault with a deadly weapon, we consider whether the evidence is legally sufficient to support the conviction, as well as several interrelated issues arising out of the prosecution's untimely disclosure of evidence.

# BACKGROUND

The evidence was undisputed that appellant shot the complainant. Appellant claimed that he had acted in self-defense, but the prosecution disputed his version of events and his belief that the shooting was justified.

## A.     The Defense's Version of Events

Appellant testified that he and the complainant worked together as electricians for a large energy and chemical company. On the day of the shooting, they both appeared at work, received their paychecks, and were dismissed early because of inclement weather.

The complainant could not easily leave the jobsite because he carpooled with another coworker whose job was unaffected by the inclement weather. Rather than wait on the jobsite until the carpooler was released, the complainant asked to hang out with appellant and a mutual friend for the rest of the day. Appellant agreed, with the plan being that appellant would drive the complainant back to the jobsite later that afternoon so that the carpooler could take the complainant home.

Appellant and the complainant then went to a gas station, where they cashed their paychecks. Afterwards, they went to a grocery store, where they purchased alcohol and food. They spent the rest of the afternoon drinking, playing pool, and singing karaoke.

As the time got later in the day, the complainant's body posture began to change, and he indicated that he was nervous about being seen by the carpooler. The complainant asked if appellant could drive him home instead, and appellant agreed, even though the complainant lived more than an hour away.

On the drive home, the complainant began receiving multiple calls on his cellphone, but he did not answer any of them. When appellant asked about the

missed calls, the complainant responded that the calls were from a creditor, to whom the complainant owed a lot of money. The complainant also explained that he did not have enough money to pay the creditor, and so he was ignoring the calls.

Once at home, the complainant asked to borrow some money from appellant, but appellant declined. The complainant then invited appellant inside to meet his girlfriend, and appellant obliged. They began drinking again, and the mood was light and friendly, until the complainant left the room and returned with a pistol. Appellant admired the weapon and asked to see it, but the complainant refused and put a bullet in the chamber instead. When appellant asked why the complainant had loaded the pistol, the complainant responded, "Oh, just in case."

Appellant suggested that he should leave, but the complainant said, "No, man. You don't need to go anywhere." Appellant acquiesced, and then his mind began to race with questions about the complainant's behavior throughout the day. He wondered whether the complainant was involved with dangerous people, and whether the complainant might try to make a move against him, considering that he had several hundred dollars on his person.

The complainant's girlfriend then began to make unusual statements, like saying that appellant was cute, and admiring the keys to his truck. Appellant believed that the complainant was getting irritated by these comments, and so appellant indicated again that he should go home. Appellant stood up to leave, and then the complainant put his arm around appellant's neck and said, "Hey, man. No, you ain't going nowhere. We're going to go smoke a cigarette real quick."

Appellant felt uncomfortable, but he followed the complainant outside after the complainant put the pistol down on the kitchen counter. After finishing the cigarette, appellant reentered the house and saw that the complainant was following closely behind. Appellant then grabbed the pistol off of the kitchen counter and told

the complainant, "Back the F up because I'm leaving this place." The complainant charged at appellant instead, so appellant fired a single shot into the complainant's chest.

Appellant told the complainant's girlfriend to call for an ambulance, and then appellant immediately left. When he got home, he called 911, reported that he had shot the complainant in self-defense, and then peaceably turned himself in.

## B. The Prosecution's Version of Events

The complainant survived the shooting, and his statements regarding the course of the day mostly aligned with appellant's statements, with some key differences.

As an initial matter, the complainant agreed with the early timeline of arriving at work, receiving his paycheck, and then being dismissed because of inclement weather. He also agreed that he spent the afternoon hanging out with appellant, that appellant ultimately gave him a ride home, and that they spent the evening together drinking and smoking.

However, the complainant testified that he never mentioned to appellant that he owed anybody money. The complainant also disagreed with appellant's statements about receiving phone calls from a creditor. The complainant explained that he owned a prepaid cellphone and that he had exhausted all of its minutes several months before the shooting. Without any minutes, he could neither make nor receive calls, unless he was using an app on a wi-fi network. On the day of the shooting, the complainant actually borrowed appellant's cellphone to let his girlfriend know his whereabouts.

The complainant also described the events at his own home differently. The complainant said that he was a gun enthusiast, and that he brought out the pistol

4

simply to show it to appellant. Because appellant did not express any interest in holding it, the complainant left the pistol on the counter.

The complainant said that he never put appellant in any sort of headlock, nor did he ever charge at appellant. The complainant testified that when appellant came back inside the house after smoking his cigarette, appellant picked up the pistol and pulled the slide back, causing a live round to eject and then fall on the floor. The complainant bent over to pick up the live round, which is when appellant shot him in the chest.

Appellant never said anything to the complainant in the moments immediately preceding the shooting, and the complainant could not think of a single reason why appellant would have shot him. As he recalled the events of the night, the complainant said that there was nothing aggressive or disagreeable about either appellant or the topics of their conversation. Up until the shooting, their interactions had been "extremely pleasant."

## C.     The Verdict

The jury apparently believed the complainant because it convicted appellant of the charged offense. The trial court then imposed a sentence of seven years' imprisonment.

SUFFICIENCY OF THE EVIDENCE

Appellant does not explicitly challenge the sufficiency of the evidence in his brief. Instead, he argues that "the verdict is contrary to the law and the evidence" because "the facts presented . . . clearly establish the legal defense of deadly force – self defense under Texas law."

Insofar as appellant believes that he established his self-defense theory as a matter of law, his argument is flawed because "the issue of self-defense is an issue

of fact to be determined by the jury." *See Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018). The prosecution's burden on that issue is merely one of persuasion—i.e., to disprove the claim of self-defense—and the prosecution satisfies that burden by proving that the defendant is guilty beyond a reasonable doubt. *Id.* at 608. Because the prosecution's burden requires the production of legally sufficient evidence, we construe appellant's argument as a challenge to the sufficiency of the evidence. *See Bogan v. State*, 180 S.W. 247, 247–48 (Tex. Crim. App. 1915) (holding that an argument that a verdict is contrary to the law and evidence only raises a challenge to the sufficiency of the evidence).

In this sufficiency challenge, we must determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The offense here was aggravated assault with a deadly weapon, which meant that the prosecution had the burden of proving the following essential elements: (1) appellant intentionally, knowingly, or recklessly caused bodily injury to the complainant, and (2) appellant used or exhibited a deadly weapon during the commission of the assault. *See* Tex. Penal Code § 22.02. When deciding whether these elements were proven beyond a reasonable doubt, we consider all of the evidence in the light most favorable to the jury's decision. *See Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015).

Appellant's own testimony established the essential elements of the offense. He admitted that he shot the complainant in the chest, thereby causing bodily injury, and during the commission of that assault, he used a pistol, which is a deadly weapon. Based on these admissions, the jury could have found the essential elements of the offense beyond a reasonable doubt.

The jury could have likewise found against appellant on the issue of self-defense. Appellant admitted that the complainant did not have a gun, a knife, a baseball bat, or any other sort of weapon at the time of the shooting. Appellant also admitted that the complainant never once communicated a verbal threat. Appellant claimed that he perceived a threat because the complainant charged at him, but there was a conflict on this point, as the complainant testified that he merely bent down to pick up a live round on the floor. Because we presume that the jury credited the complainant's testimony under our standard of review, we conclude that the jury could have determined that appellant did not reasonably perceive an immediate threat of unlawful force from the complainant. That conclusion likewise means that the jury had sufficient evidence to find that appellant's use of force against the complainant was not justified. *See* Tex. Penal Code § 9.31 (enumerating the requirements for the use of force in self-defense).

We overrule appellant's argument that he clearly established his claim of self-defense.

## UNTIMELY DISCLOSURE OF EVIDENCE

After he was discharged from the hospital, the complainant was interviewed by a detective, who informed the complainant that appellant had called 911 and turned himself in. The detective also relayed the contents of appellant's conversation with the 911 dispatcher, and more particularly, how appellant claimed that the complainant had received several phone calls from a creditor during the drive home. The complainant responded with disbelief, asserting that he had no minutes on his cellphone and that he could not have received any phone calls. The complainant then consented to have his cellphone imaged to prove that he did not receive any phone calls.

The cellphone was extracted and its data was saved to a disc, but the disc itself was never turned over to the defense in advance of trial because the detective apparently misplaced it, possibly during her change of employment between different law enforcement agencies. On the second day of trial, the disc was still not available, but the prosecution elicited testimony from the detective about the contents of the disc. The prosecution asked, "Do you recall whether or not you found or you saw anything on [the disc] that was relevant or that either backed up the defendant's story that there was a bunch of calls coming in at the time?" The detective answered, "I did not find anything relevant."

After the detective testified, she went home and located the disc. She then notified the prosecution the following morning.

Before the trial resumed, the prosecution disclosed to the defense and to the trial court that the disc had been found. The defense immediately moved for a mistrial, accusing the prosecution of misconduct and of intentionally violating the rules of discovery. The trial court denied the motion for mistrial, but ruled that the prosecution would not be allowed to offer the disc into evidence. The trial court also ruled that the defense could offer the disc into evidence if the defense found anything beneficial on the disc.

A recess was taken, in which the defense was given time to examine the contents of the disc. At the end of the recess, the defense asserted that it had not finished reviewing the disc, and that it may seek out an expert to analyze all of the data.

The trial court then called on the police sergeant who had performed the data extraction. While still outside the presence of the jury, the trial court asked the sergeant if the disc contained the call log from the cellphone, or if the sergeant could determine whether calls had been deleted from the call log. The sergeant responded

8

that his impression was that the disc did not contain the call log, but he would need additional time to verify that belief and to determine whether any calls had been deleted.

The defense interjected that it was uncomfortable with relying on the representations of the sergeant, who was a witness for the prosecution. The trial court reiterated that the prosecution could not use the disc in any event, and that the disc would be admitted for record purposes only, unless the defense affirmatively sought its admission for some other purpose. The defense ultimately decided to not use the disc.

After the trial was over, the defense moved for a new trial on the basis that the prosecution had failed to turn over the disc in response to a timely discovery request. That motion was denied by operation of law.

Appellant now complains in several issues that the trial court should have granted a continuance, a mistrial, or a new trial, all because of the prosecution's untimely disclosure of the disc. We examine each of these points separately.

## A. Motion for Continuance

Appellant argues that the trial court abused its discretion by denying a motion for continuance, but he does not reveal where in the record that he ever requested a continuance. From what we can discern, the statement that most nearly approximates a motion for continuance is defense counsel's representation to the trial court that he "need[s] to have somebody that understands all this much better than me review it." If that statement can be construed as a motion for continuance, appellant never obtained an adverse ruling, which is necessary to preserve error. *See* Tex. R. App. P. 33.1.

9

Even if we were to assume for the sake of argument that appellant implicitly received an adverse ruling, this appellate complaint would still fail because counsel's statement was oral, whereas motions for continuance must be written and sworn. *See* Tex. Code Crim. Proc. arts. 29.03, 29.08; *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009), *declined to follow on other grounds by Grado v. State*, 445 S.W.3d 736 (Tex. Crim. App. 2014). Because the oral motion, if any, did not comply with the applicable rules, we cannot say that the trial court abused its discretion by denying it. *See Gentry v. State*, 770 S.W.2d 780, 786 (Tex. Crim. App. 1988) (finding no abuse of discretion where the defendant's mid-trial motion for continuance was oral, rather than written and sworn).

## B. Motion for Mistrial

Unlike with the motion for continuance, the record unmistakably establishes that appellant moved for a mistrial, and that the trial court denied his motion. We review such rulings for an abuse of discretion. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Because a mistrial is a serious remedy, it should be reserved for only extreme situations of highly prejudicial and incurable misconduct. *Id.* If the trial court could have reasonably determined that the challenged misconduct did not rise to that level, then the trial court's denial of a motion for mistrial must be upheld. *Id.*

Appellant argued in the trial court that he was entitled to a mistrial because the prosecution had engaged in intentional misconduct by withholding the disc from discovery and then by deliberating disclosing the disc in the middle of trial when the defense could not adequately review or analyze its voluminous contents. The trial court rejected that argument and refused to make a finding of bad faith: "I'm not saying the State hid anything." That ruling was within the zone of reasonable disagreement.

At the time of the motion for mistrial, the trial court had already heard the live testimony of the detective, who opined that the disc must have been misplaced when she closed out all of her files because she was transferring to another law enforcement agency. The detective also testified that she had previously searched for the disc at the prosecution's request, and that she had found neither a physical copy of the disc nor a digital copy on her hard drive. The trial court could have reasonably accepted the detective's explanations and found that the untimely disclosure had been the result of negligence, not bad faith. And because that implied finding would have been based on an evaluation of the detective's credibility and demeanor, we have no authority to disturb it.

For similar reasons, the trial court could have also determined that the detective had no improper motive in withholding the disc because both the complainant and his girlfriend had testified that there were no minutes on the complainant's cellphone, which tends to corroborate the detective's ultimate opinion that there was no evidence on the disc relevant to appellant's defensive theory.

The record shows that the trial court was considerate of the defense's interests. Because the disclosure of the disc had been untimely, the trial court precluded the prosecution from offering it into evidence. Mindful that the disc might still contain evidence that was beneficial to appellant, the trial court also provided a recess for the defense to examine the disc and determine whether it should be introduced into evidence. As the trial court stated, "You're going to find out whether it's helpful or not, and if it is helpful to your case, you're going to get to use it. . . . It's that simple, so you're not at any disadvantage."

We agree with the trial court that the untimely disclosure of the disc was not the type of extreme occurrence that necessitated a mistrial. Lesser remedies were available, and the trial court provided them by preventing the prosecution from using

the disc and by affording the defense the sole of option to offer the disc into evidence. The trial court could have further instructed the jury to disregard the detective's testimony, but the defense never made that request. Because there were less drastic means of addressing the prosecution's discovery violation, we conclude that the trial court did not abuse its discretion by denying appellant's motion for mistrial. *Cf. Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (concluding that the trial court did not abuse its discretion by denying a motion for mistrial in response to an alleged discovery violation because the defendant did not request the less drastic remedy of a continuance).

## C.      Motion for New Trial

Four days after the trial court rendered a judgment of conviction, the defense filed a motion arguing that the trial court should grant a new trial in the interest of justice because the prosecution had violated appellant's constitutional and statutory rights by failing to turn over the disc despite a timely discovery request. As stated above, the trial court denied the motion by operation of law.

We review the trial court's ruling on a motion for new trial for an abuse of discretion. *See State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014). The test for abuse of discretion is not whether, in our opinion as an appellate court, the facts present an appropriate case for the trial court's action, but rather, whether the trial court acted without reference to any guiding rules or principles. *Id.*

A trial court properly grants a new trial when the defendant (1) articulates a valid legal claim in his motion for new trial, (2) produces evidence or points to evidence in the trial record that substantiates his legal claim, and (3) shows that he was prejudiced. *See State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013).

12

In this case, appellant did not establish the third requirement that he was prejudiced by the untimely disclosure of the disc. Even though he had had several extra days to review the disc by the time he filed his motion for new trial, appellant did not include any facts in the motion itself showing that the disc contained evidence that was relevant to his defensive theory. Quite the opposite, his motion ended with a recitation of facts about an unrelated criminal defendant from a completely separate trial.

Appellant tries to make a claim for prejudice in his brief, asserting that he did not receive the cellphone extraction report until he filed his motion for new trial. He then contradicts that assertion by representing in the very next paragraph that he received the report eight months after he filed his motion for new trial, which was during the pendency of this appeal. Neither assertion is supported by a citation to the record, which indicates that appellant obtained access to the report when the trial court admitted the disc during the trial for purposes of the record.

Appellant also attaches certain exhibits to his brief, including various emails and an affidavit, all of which are outside the official appellate record, and none of which contains any facts showing that he was prejudiced.

He further relies on one other exhibit, an excerpt from the cellphone extraction report, which does happen to be part of the official appellate record. This exhibit contains information that tends to establish that the complainant's cellphone was active on the day of the offense. Appellant asserts that this activity corresponds with actual phone calls, but we cannot draw the same conclusion because the quality of the information is hyper-technical and not plainly decipherable to the lay reader. There is no neatly organized call log, showing incoming and outgoing calls, for instance. Instead, there are strings of numbers and letters over sixty characters long, next to timestamps and what appear to be various types of server and folder data.

We cannot discern whether this information indicates that the complainant made or received calls over his prepaid carrier's network (which might undermine the complainant's story); whether the complainant made or received calls over a wi-fi network (which might be consistent with the complainant's story); or whether the complainant used his cellphone for a purpose entirely unrelated to making or receiving calls (like taking or reviewing pictures).

In any event, even if we were to assume that one of these exhibits somehow showed that the disc contained facts that were material to appellant's defensive theory, those facts were never specifically brought to the attention of the trial court. Appellant did not mention such facts in his motion for new trial. He did not even supply the trial court with an expert affidavit explaining the information from the cellphone extraction report. Because appellant did not satisfy his burden of showing that he was prejudiced by the untimely disclosure of the disc, we cannot say that the trial court acted without guiding rules and principles by denying appellant's motion for new trial. *See Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) ("An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal. While the record may be supplemented under the appellate rules if something has been omitted, the supplementation rules cannot be used to create new evidence. Moreover, an appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling.").

**RESPONSE TO DISSENT**

Like the dissent, we strongly disapprove of the detective's mishandling of the disc, which resulted in a discovery violation. However, a defendant is not automatically entitled to relief upon the mere occurrence of a discovery violation. The defendant must still carry his burden of proving that he was prejudiced.

14

The dissent would excuse appellant of this burden and shift the burden to the prosecution to prove that the untimely disclosed evidence was not favorable to the defense, but the dissent provides no authority whatsoever for this proposed burden-shifting framework, which is contrary to binding precedent. *See Pena v. State*, 353 S.W.3d 797, 811 (Tex. Crim. App. 2011) (holding that the defendant has the burden of showing that the prosecution withheld favorable evidence).

The dissent goes on to suggest that the defense had no opportunity to demonstrate prejudice because the prosecution did not supply the defense with a copy of the disc until after the defense had filed its motion for new trial. This position is also untenable. The transcript shows that the disc was admitted for record purposes during the trial itself. The defense had access to the disc at that point.

The defense also had thirty-two days to file its motion for new trial. *See* Tex. R. App. P. 21.4 (providing that a motion for new trial is due thirty days after the sentence is imposed); Tex. R. App. P. 4.1 (extending the period when, as here, the last day falls on a weekend). The defense did not exhaust that thirty-two day period. Nor did the defense ever file any sort of motion or pleading with the trial court claiming that it had been denied access to the disc. Instead, the defense filed a motion for new trial just four days after the trial was over, and rather than address the contents of the disc, the defense erroneously addressed the events of any unrelated criminal trial (most likely because the motion was recycled from the file of another client). The defense simply made no effort to demonstrate that appellant suffered prejudice.

The defense filed a brief in this appeal nearly ten months after the trial was over. We know that the defense had direct access to the disc during some portion of that ten months because the defense addressed the disc in the brief. The defense cited to individual pages from the extraction report and argued that the evidence on those

pages demonstrated that appellant had been prejudiced by the untimely disclosure. We fully addressed those defensive arguments in the previous section of this opinion. But our dissenting colleague, apparently unsatisfied by appellant's brief, believed that more arguments could have been made because she took the extraordinary step of combing through all 7,098 pages of the extraction report in search for other evidence of prejudice.

In a point that was not raised anywhere in the briefing, the dissent argues that there is evidence of prejudice because the extraction report contains copies of text messages, and the dissent believes that the defense could have used these text messages to show that the complainant was experiencing certain financial hardships, which might then support appellant's claim that the complainant owed a creditor a great sum of money. The dissent's argument is unpersuasive because the text messages referred to mundane obligations, like a car note and certain court fees in an unrelated case. There were not any text messages that would substantiate a defensive theory that the complainant was in debt to a potentially violent creditor. To a certain extent, appellant may have benefited by not having this evidence presented to the jury because one of the text messages demonstrated that the complainant added $45 to his account in exchange for five gigabytes of data, which tends to corroborate the complainant's testimony that his cellphone plan was prepaid.

In another point that was never raised by the defense, the dissent argues that there is additional evidence of prejudice because the extraction report reflects that the complainant made contact with two people in the month preceding the offense, and he made a separate contact with a third person on the same morning as the offense. This evidence does not demonstrate prejudice either because the report does not indicate whether these calls were transmitted over a carrier's network or over a

wi-fi network. Without knowing that information, no conclusion can be drawn about the complainant's credibility or about the merits of appellant's defensive theory.

The record does not affirmatively reveal how much time during the trial that the defense had to review the disc, or even if the defense was able to carefully peruse the content of the text messages. All we know is that the defense made the sensible judgment under the circumstances to not offer the disc into evidence and then argue in closing statements that the absence of the disc provided grounds for reasonable doubt. The jury was unpersuaded by that argument, and the trial court found no reason for granting a new trial. After considering the issues raised in this appeal, we have no basis for questioning the trial court's judgment because neither the defense nor the dissent has pointed to any evidence from the disc showing that the untimely disclosure resulted in prejudice.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
        Justice


Panel consists of Justices Christopher, Jewell, and Hassan. (Hassan, J., dissenting). Publish — Tex. R. App. P. 47.2(b).